489 P.2d 48

**Marion E. NACE, Appellant,**

**v.**

**Harry L. NACE, Jr., Appellee.**

**No. 10436.**

Supreme Court of Arizona,
In Division.

Sept. 30, 1971.

Rehearing Denied Oct. 27, 1971.

Harrison, Myers & Singer, Brown, Vlassis & Bain by Jack E. Brown, and Bruce E. Babbitt, Phoenix, for appellant.

Thomas W. Murphy, Phoenix, for appellee.

LOCKWOOD, Justice:

This is an appeal of an order of the Superior Court terminating alimony. The pertinent facts are that the appellant, Marion E. Nace, was granted a divorce from the appellee, Harry L. Nace, Jr., in 1966.[1] The divorce decree provided that Nace was to pay a substantial monthly sum of alimony.

In November, 1967, Mrs. Nace (whom we will refer to as Marion) suffered a "nervous breakdown." She placed the minor son of the parties in the care of Nace and went from Phoenix to California and then to Guadalajara, Jalisco, Mexico. While in Mexico, Marion boarded with a family for awhile, and did some volunteer work in an orphanage. In October, 1968, she returned to this country and became a resident of Synanon House in Santa Monica, California. The evidence has not clearly established the nature and purposes of Synanon, but it can be stated generally that Synanon is a community of people who have had problems with drug addiction, criminality, mental health, or other sociological phenomena. The object of Synanon is to teach people to accept and develop themselves through the use of group therapy. There are no "teachers" at Synanon, only "members." The community is supported by voluntary contributions.

Marion remained at Synanon, either living on the premises or in a nearby apartment, for about seven months, until May, 1969, and then went to live with friends elsewhere in California. She made no contributions to her support at Synanon, and afterwards was entirely supported by the charity of her friends. She has not worked for compensation since before her marriage in 1956.

Meanwhile, Nace stopped paying alimony in November, 1967, when Marion left Phoenix. They had no contact during her absence, and for a good part of that time, Nace did not know of Marion's whereabouts. About sixteen months after he stopped making alimony payments, Nace petitioned for a termination of alimony on the ground that Marion had no further need for alimony, and that her lack of need was evidenced by her failure to make a demand for a resumption of the alimony payments. Marion did not attend the hearing on this petition, but her deposition was taken at Synanon, and later admitted into evidence. Her lawyer stated that because of her mental condition it would be best if she not attend the hearing. At that hearing, held April 9, 1969, the court heard Marion's petition, which had been filed in the meantime, to fix the arrearage of the accrued but unpaid alimony, and for other amounts owed. The trial court then ordered Nace to pay the arrearages, but terminated all future alimony.

Marion moved for rehearing, and alleged that if a rehearing were held, she would be sufficiently recovered so as to be able to attend and testify. A hearing on this motion was held on June 26, 1969, at which time the trial court stated that it would treat the motion as one for a new trial on the ground of newly discovered evidence; the court then found that none of the evidence introduced was shown to be newly discovered, and thereupon denied the motion for rehearing.

Marion appeals on the ground that the trial court abused its discretion by terminating all of the alimony, even though the evidence is uncontradicted that she had no job, had not been employed in over ten years, had no income, was being supported exclusively by the charity of friends, and

---

1. This is the second time that these parties have been before this court. In Nace v. Nace, 104 Ariz. 20, 448 P.2d 76 (1968), we held that the trial court did not abuse its discretion in dividing the community property of the parties pursuant to A.R.S. § 25–318, subsec. A (1962).

that Nace was well able to pay alimony, considering that he owned a substantial interest in the "Nace Circuit" of movie theaters.

It is clear that the most important of the functions of alimony is to provide support for the wife as nearly as possible at the standard of living which she enjoyed during marriage, and thereby to prevent the wife's becoming dependent upon public support or relief. See Norton v. Norton, 101 Ariz. 444, 420 P.2d 578 (1966); Clark, Law of Domestic Relations (1968), at 441, 444.

In Arizona, as in most states, once the trial court makes an award of alimony, it retains jurisdiction over the matter and may modify the alimony order at any later time, "as may be just" under the circumstances. A.R.S. § 25-321. The criteria to be considered in determining whether to modify an order for alimony are the same as the criteria considered in making a determination as to the reasonableness of an award for support and maintenance at the time of the original decree, including the financial conditions and needs of the wife, the ability of the wife to produce a sufficient income for herself, and the ability of the husband to provide support for the wife. Norton v. Norton, supra. See also Kennedy v. Kennedy, 93 Ariz. 252, 379 P. 2d 966 (1963).

Most American jurisdictions have allowed modification of alimony only where clearly defined reasons exist. 24 Am.Jur.2d at 795; 18 A.L.R.2d 16, § 2. There must be a *substantial* change in the financial circumstances of the husband or wife; a merely "subjective" change in circumstances is not sufficient to justify modification of an alimony judgment. See Sheeley v. Sheeley, 10 Ariz.App. 318, 458 P.2d 522 (1969).

The decision as to whether there has been a sufficient change in circumstances to justify a modification of the order lies with the sound discretion of the trial court. Spector v. Spector, 94 Ariz. 175, 382 P.2d 659 (1963); Cummings v. Lockwood, 84 Ariz. 335, 327 P.2d 1012 (1958). This Court has acknowledged that much weight should be given to the findings of fact made by the trial court because of the better opportunities of that court to weigh the testimony. The trial court's discretion will not be interfered with unless it is abused. Fought v. Fought, 94 Ariz. 187, 382 P.2d 667 (1963); Bonine v. Bonine, 90 Ariz. 319, 367 P.2d 664 (1961).

If alimony is not necessary for a wife's support and maintenance, then the husband should not be required to pay it, Franklin v. Franklin, 75 Ariz. 151, 253 P. 2d 337 (1953); Tennery v. Tennery, 35 Ariz. 69, 274 P. 638 (1929). We feel that in the instant case, however, Marion's circumstances have not been shown to have changed sufficiently so as to justify the trial court's order terminating all future alimony.

The trial court apparently assumed that when Marion moved to Mexico and then to Synanon House, she had forever changed her living habits from those of a housewife according to her former circumstances to those of a person entirely without income and supported by charity. We do not find that the record supports this assumption. Although there was testimony that some Synanon residents planned on staying in that community permanently, it is clear that many Synanon members choose to leave the environment and return to outside society. Marion testified:

"Q. * * * At the time you entered Synanon, was it in your mind a permanent way of life?

"A. I didn't—I had no idea, no, I don't believe it was."

Even if it were clearly shown that Marion did *at one time* plan to remain at Synanon indefinitely, we do not believe that this would justify the trial court terminating all alimony. It is unreasonable to expect that a woman in Marion's circumstances would never again desire to possess any of the comparative luxuries to which she had previously had access during her

married life. The fact that she has left Synanon, is a significant indication that she will not be spending the rest of her life in penniless introspection.

The trial court found that "the plaintiff's circumstances and needs have drastically changed since the entry of the decree and she no longer has the needs which prompted the Court to award her the amount of alimony originally ordered." The trial court however failed to determine whether the change in Marion's circumstances during her sojourn in Mexico, at Synanon, and as the charitable object of her friends was something more than a transitory or temporary condition.

In Apfel v. Apfel, 238 Iowa 274, 27 N. W.2d 31 (1947), a wife was awarded alimony, and later she took a job in a war-related industry. When the husband petitioned to have the alimony decree modified downward, the court declined to grant him relief because the change in the wife's financial circumstances was possibly only a temporary one, being related to the wartime industry. The Iowa court stated that "[c]onditions are variable and when a change is made following a hearing, it seems to us it should be based upon something more or less permanent or continuous, not merely upon transitory, variable, or temporary conditons." 238 Iowa at 279, 27 N.W.2d at 34.

Nace testified that his former wife had had mental problems during and even prior to their marriage, and there was testimony that Marion had been seeing a psychiatrist since before 1960. Her failure to demand the alimony payments as they came due is not relevant. In Bart v. Bart, 182 Md. 477, 35 A.2d 125 (1943), the court stated that:

"[t]he power of the court [to modify an alimony judgment] can not be cut down by the failure of the wife to ask for its exercise at a time when she perhaps did not want it. She did not delay very long after she claims it was made necessary for her to have some support. No harm has been done the [husband] by her failure to ask before. In fact he has been financially benefited because he has been free from any payments for nine years. He may not have expected any further demands upon him, but he is presumed to know that demands might be made upon him, and he is not injured by the fact that they were not * * *." 182 Md. at 480, 35 A.2d at 127.

In the instant case, we feel that the trial court abused its discretion by failing to consider that Marion's change in circumstances during the time she existed on charity was of a transitory nature, induced by her mental and perhaps physical inability to do what was necessary to secure enforcement of payment of alimony as originally ordered.

We decline to take on the presumptuous duty of telling Marion how to live her life, how and where to spend her money, or even to spend it at all. If she has decided to temporarily alter her former living style, we will not label this as a "change of circumstances," for it is not that at all, but is only the manifestation of her decision as to how to live life. We may not agree with it, but we certainly respect her right to decide.

The order terminating alimony is reversed and set aside.

STRUCKMEYER, C. J., and HAYS, V. C. J., concur.