603 P.2d 81

In re the Marriage of Dale L.
STATES, Appellee,

v.

Bonnie R. STATES, Appellant.

No. 14441.

Supreme Court of Arizona,
En Banc.

Oct. 16, 1979.

Rehearing Denied Nov. 27, 1979.

Logan & Aguirre by Jonathan H. Schwartz, Phoenix, for appellant.

Charles I. Robson, Mesa, for appellee.

HAYS, Justice.

This case arises out of a 1978 modification of a decree of divorce granted in 1971. After fourteen years of marriage, in 1971 appellee left the family home and petitioned for divorce. The parties entered into a property settlement agreement, one provision of which gave appellant $400 a month until she remarried or died regardless of whether or not she was employed. The property settlement was incorporated into the divorce decree by specific reference. In 1977 appellee petitioned for termination of spousal maintenance under A.R.S. § 25–327, alleging changed circumstances. Pursuant to a ruling favorable to appellee, appellant lodged a timely appeal. We have jurisdiction under Rule 19(e) of the Rules of Civil Appellate Procedure.

Two issues are presented:

1. Was the spousal maintenance provided for in the property settlement consideration for appellant's waiver of all right and interest in the community property and, consequently, not subject to modification?

**190**

2. If the maintenance was subject to modification, did the court commit reversible error in terminating it?

## WAS SPOUSAL MAINTENANCE CONSIDERATION FOR APPELLANT'S SHARE OF THE COMMUNITY PROPERTY?

Appellant maintains that under the clear wording of the property settlement prepared by appellee's attorney and incorporated in the divorce decree of 1971, she is entitled to receive $400 a month subject to termination upon marriage or death and that this was in consideration of her part of the community assets. Appellee answers that such was not the intent of that provision.

██ In Arizona it is well established that, to permit modification of a decree fixing spousal maintenance, the alimony must not be in any part a consideration for the property settlement because it would then constitute one party's share of the community assets and not be subject to modification or termination. *Gillespie v. Gillespie*, 74 Ariz. 1, 242 P.2d 837 (1952). We reiterated this principle in *Simpson v. Superior Court*, 87 Ariz. 350, 358, 351 P.2d 179, 185 (1960), and there set forth the criteria for deciding whether the payments were intended to be solely maintenance or consideration for the property settlement:

1) The provisions of the agreement.
2) The circumstances under which the agreement was made.
3) The nature and value of the community property distributed to each party.
4) The original divorce proceedings.
5) The terms of the original decree sought to be modified.

### The Agreement

██ Section 6 of the agreement, styled SUPPORT FOR THE WIFE, reads as follows:

The Husband shall pay to the Wife as and for a conveyance of property *in satisfaction of Wife's claim to community property* the following sums of money and transfer of property:

(a) Lot 4, PINEDALE ESTATES, . . . .

(b) $4,000 in cash. . . .

In addition to the foregoing, the Husband agrees to pay the sum of $400 per month as and for alimony to Wife, said payments to continue until the death or marriage of Wife, notwithstanding any change in the economic condition of Wife and notwithstanding the fact that Wife may become employed in the future. (Emphasis added.)

It is difficult to imagine a clearer statement that the provisions of this section were intended as a satisfaction of the wife's claim to community property. The fact that the word "alimony" is used is not dispositive of whether in fact the payments were for temporary support or as consideration for relinquishment of all claims to community property. We note that A.R.S. § 25–327, under which appellee sought termination of the payments, does not speak of "alimony," but of "support" and "maintenance." The trial court ruled that the $400 per month payments were not a settlement of appellant's right to her share of the community and, therefore, were subject to termination upon a showing of changed circumstances. We are persuaded, however, that the provision unequivocally negates the termination of maintenance except upon death or marriage "notwithstanding any change in the economic condition of Wife. . . ."

Nonetheless, appellee now argues that it was his intent to provide maintenance only until appellant could secure sufficient education to support herself. Appellant answers that, considering all the terms of the settlement, she would never have signed the agreement if she had known that appellee could terminate maintenance at some unspecified point in the future because she had no other means of support and three minor children to raise.

### Circumstances Surrounding the Agreement

The record reflects that, immediately prior to the divorce, creditors were harassing appellant, threatening to cut off utilities and repossess furnishings; that appellee re-

fused to pay more than $200 a month for support *pendente lite* although his wife had to provide for three minor children; and that appellee filed an order to show cause seeking sale of the family residence to pay alleged indebtedness. Appellant sought an injunction to restrain appellee from entering the family home, removing and disposing of items and to compel appellee to present an inventory of community assets and their value.

Against this background, appellee personally carried the property settlement to the family home on a Sunday evening. Appellant's attorney was out of town and could not be reached. In addition, we note that appellee was and is a practicing attorney familiar with the nature and legal consequences of such documents.

*Nature and Value of the Community Property Divided*

We now turn to an examination of the value and distribution of community assets. With few exceptions, appellee did not list the value of items in the settlement and schedules attached thereto. Under the terms of the agreement, appellant received only the lot and sums of money listed in Section 6, *supra*, plus a 1967 car and household furnishings. Except for the $4,000 cash, appellant could anticipate only the $400 a month maintenance, plus a sum for child support, for herself and the three small children.

On the other hand, appellee, who was making in excess of $20,000 a year, received the entire interest in the law firm of which he is a partner, the family residence worth $60,000 with a $24,000 equity, all stocks and bonds, all interests in two corporations, all the parties' interest in a 35-ft. Chriscraft boat, and a 1970 truck. Appellee assumed certain community debts that had accrued up to the date of the decree. We note, however, that since appellee never supplied the inventory of assets requested by appellant, she had no way of knowing the value of those items reserved to appellee under the terms of the agreement. Moreover, appellee had an established law practice from which he could expect to pay the

obligations assumed while appellant was left with three young children—which made it impossible for her to work at the time— and no source of income whatsoever except the $4,000 lump sum and the promise of $400 a month contained in the settlement.

*Original Divorce Proceedings*

By stipulation of the parties two days after the agreement was signed, the divorce proceedings were handled as a default by the court commissioner. No testimony was taken and there was never an impartial judicial determination as to whether the community assets were fairly divided.

## CONCLUSION

Having considered and applied the criteria enumerated in *Simpson, supra*, we hold that the provision for $400 per month maintenance was consideration for appellant's interest in the community. Consequently, it was not subject to termination. *Gillespie, supra.*

In view of our resolution of the first issue, we need not reach the second issue raised by appellant.

Accordingly, we reverse and remand for proceedings consistent with this opinion.

CAMERON, C. J., and GORDON, J., concur.

STRUCKMEYER, Vice Chief Justice, concurring in the result.

I am of the opinion that the court below erred and that its judgment must be reversed because there was no legal basis in this case to modify the provisions of the property settlement agreement.

By A.R.S. § 25–317 (Laws of 1973, Ch. 139, § 2), to promote amicable settlement of disputes between parties to a marriage attendant upon their separation "the parties may enter into a written separation agreement containing provisions for disposition of any property owned by either of them, maintenance of either of them, * * * If the court finds that the separation agreement is not unfair as to disposition of property or maintenance * * * the separa-

tion agreement shall be set forth or incorporated by reference in the decree of dissolution * * *." The Superior Court, pursuant to the statute, specifically found at the time it entered judgment that the agreement was fair as to the alimony which the husband agreed to provide for the wife.

Section 25–317 also provides that except for terms concerning the maintenance of either party, the entry of the decree shall preclude the modification of the terms of the decree. The statute does not provide what facts are appropriate for the court to consider if an attempt is made by one of the parties to modify the maintenance provisions of the decree. This Court, however, pointed out the applicable principle governing modification of support for the wife in *Nace v. Nace*, 107 Ariz. 411, 489 P.2d 48 (1971):

> "Most American jurisdictions have allowed modification of alimony only where clearly defined reasons exist. 24 Am. Jur.2d at 795; 18 A.L.R.2d 16, § 2. There must be a *substantial* change in the financial circumstances of the husband or wife; a merely 'subjective' change in circumstances is not sufficient to justify modification of an alimony judgment. See *Sheeley v. Sheeley*, 10 Ariz.App. 318, 458 P.2d 522 (1969)."

An examination of the record, including the testimony introduced at the modification hearing, establishes that there was no legal reason whatsoever to order the $400.00 per month support for the wife terminated contrary to the husband's explicit and solemn promise in the agreement. The record suggests that the trial judge ordered the provision of the separation agreement changed because he thought the wife was capable of working and ought to work. The personal eccentricity of the trial judge in this respect is, of course, inconsistent with the finding of fairness of the original separation agreement.

During the marriage, the wife contributed to the marital wellbeing as a housewife and mother, working outside the home for only a brief period. The provision for alimony to which the husband agreed is as

firm and plain as it is possible to make the English language. The separation agreement provides: "said payments to continue until the death or marriage of Wife, notwithstanding any change in the economic condition of Wife * * *." The agreement was not bottomed on the condition that the husband was to pay alimony until the wife became employed or employable. It was an agreement that the wife would receive the benefits of alimony in order that she would not have to join the labor market. The court grossly abused its discretion in ordering the decree of divorce modified by elimination of the maintenance provision for the wife.

Before proceeding further, section 6 of the property settlement agreement warrants another look. It reads:

> "The Husband shall pay to the Wife as and for a conveyance of property in satisfaction of Wife's claim to community property the following sums of money and transfer of property:
>
> (a) Lot 4, PINEDALE ESTATES, according to the records of the Navajo County Recorder, Navajo County, Arizona.
>
> (b) $4,000.00 in cash on or before September 10, 1971.
>
> In addition to the foregoing, the Husband agrees to pay the sum of $400.00 per month as and for alimony to Wife, said payments to continue until the death or marriage of Wife, notwithstanding any change in the economic condition of Wife and notwithstanding the fact that Wife may become employed in the future."

The majority of this Court conclude that it is difficult to imagine a clearer statement that the provisions of this section were intended as satisfaction of the wife's claim to community property. I think otherwise.

By the first paragraph of section 6, the husband promised to pay to his wife "in satisfaction of Wife's claim to community property * * * (a) Lot 4, PINEDALE ESTATES" and "(b) $4,000.00 in cash * *." The first paragraph of section 6 does not provide that $400.00 per month would be paid for the wife's interest in the communi-

ty. Instead, after setting forth what shall be given to the wife in satisfaction of her claim to community property, a second, new paragraph is added. In the new paragraph, the husband promises to pay $400.00 per month to the wife "as and for alimony." Had the $400.00 been intended to be part of the previous paragraph in satisfaction of the wife's community property, the agreement would have read that the husband would pay to the wife in satisfaction of her community claims, "(a) Lot 4, PINEDALE ESTATES * * * (b) $4,000.00 in cash * * * (c) $400.00 per month * * *." But this is not the way the agreement reads. In a separate paragraph, the husband promised to pay his wife the sum of $400.00 per month "as and for alimony."

"Alimony" is a word with a well understood meaning in the English language. It is defined by Webster's Third New International Dictionary as "an allowance made to a woman for her support * * *." Literally hundreds of cases support this definition. Certainly, the husband, a lawyer, who wrote the agreement, could not have been other than fully aware of its meaning. Consequently, the $400.00 per month given to the wife by the agreement could not have been in satisfaction of her claim to community property but was an allowance made to her for her support. It is alimony simply because the agreement says it is.

For the foregoing reasons, while I disagree with the basis for the reversal, I concur in the result.

HOLOHAN, Justice, concurring.

I concur in the opinion of the Vice Chief Justice.