603 P.2d 85

**Lia A. MORI, Appellant and Cross-Appellee,**

v.

**Foster G. MORI, Appellee and Cross-Appellant.**

No. 14438.

Supreme Court of Arizona, En Banc.

Nov. 5, 1979.

Leibsohn, Eaton, Gooding & Romley by Joe M. Romley, Phoenix, for appellant and cross-appellee.

Bistrow & Mikal by Eric J. Bistrow, Phoenix, for appellee and cross-appellant.

HAYS, Justice.

This case emerges from a morass of procedural entanglements. Appellant (cross-appellee) appealed from a judgment of dissolution and divorce rendered June 4, 1975, and confirmed by subsequent judgments of February 23 and May 12, 1976. Appellee cross-appealed from the award of attorney fees. We have jurisdiction pursuant to Arizona Rules of Civil Appellate Procedure, rule 19(e).

Appellant raises the following issues:

1. DID THE COURT ABUSE ITS DISCRETION BY ENTERING A SHORT–TERM, NON–MODIFIABLE AWARD OF SPOUSAL MAINTENANCE FOR ONE YEAR?

2. DID THE COURT ERR IN EXCLUDING ACCOUNTS RECEIVABLE IN DETERMINING THE VALUE OF APPELLEE'S LAW PRACTICE?

3. DID THE COURT ERR IN FIXING THE VALUE OF CERTAIN PROPERTY IN TEXAS?

4. MUST APPELLEE ACCOUNT FOR GIFTS OF TWO CARS PURCHASED FROM COMMUNITY FUNDS?

5. IS APPELLANT ENTITLED TO $650 IN ARREARAGES FOR MAINTENANCE *PENDENTE LITE*?

6. DID THE COURT ERR IN NOT AWARDING APPELLANT OFFSETTING CREDITS FOR TRANSFERS OF CERTAIN FUNDS FROM COMMUNITY ASSETS BY APPELLEE?

7. DID THE COURT DENY APPELLANT DUE PROCESS?

8. WAS THE COURT CORRECT IN CLASSIFYING CERTAIN PROPERTY IN MESA AS COMMUNITY

AND, ALTERNATIVELY, IS APPELLANT AT LEAST ENTITLED TO A $15,000 LIEN AGAINST THE PROPERTY BASED ON EXPENDITURE OF SEPARATE FUNDS TO IMPROVE THE PROPERTY?

## I. AWARD OF SPOUSAL MAINTENANCE

■ The trial judge tried to equitably divide the community property. Appellee, who at the time of trial was making $5,000 a month from his law practice, received the bulk of the cash. Appellant received real property, a small amount of cash, and $1,000 a month maintenance for one year. Appellant does not dispute the amount of maintenance, but urges that it was an abuse of discretion to terminate maintenance automatically after one year.

The legislature has provided rather specific guidelines for determining the amount and duration of spousal maintenance in A.R.S. § 25–319(B). At the time of the trial of this case, the guidelines to be considered by the court were as follows:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently.

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment.

(3) The standard of living established during the marriage.

(4) The duration of the marriage.

(5) The age and the physical and emotional condition of the spouse seeking maintenance.

(6) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

(7) Excessive or abnormal expenditures, destruction, concealment, or fraudulent disposition of community, joint tenancy and other property held in common.

We are customarily reluctant to disturb the trial court's rulings in such matters and usually defer to its judgment if there is competent evidence to support the conclusion reached. *Nace v. Nace*, 107 Ariz. 411, 489 P.2d 48 (1971). Under the particular circumstances of this case, however, we find that it was an abuse of discretion to terminate maintenance automatically after one year.

Appellant was 52 when this action commenced in 1973 and had been married for almost 25 years. Other than teaching for six months in 1950 while her husband finished law school in Tucson, she had no previous employment record. Appellant testified that she was studying for an M.A. at the time of the trial, but that she wished to obtain an M.C. in Counseling in order to secure employment with a clinic or hospital. Additionally, she stated that her Arizona teaching certificate had expired years before and that even if she sought to reinstate it, she could teach only at the elementary level.

Further testimony established that appellant would need about three years to earn an M.C. because the program was accepting no more applicants at that time. We note that the second criterion under A.R.S. § 25–319(B) speaks specifically of "appropriate employment." The duration of the marriage (25 years) and age of the spouse are also specifically mentioned in the statute. In view of her age and lack of employment history, it was not certain that appellant could secure appropriate employment upon completion of the degree program. We agree with the reasoning of the Court of Appeals in *Lindsay v. Lindsay*, 115 Ariz. 322, 328–29, 565 P.2d 199, 205–06 (App.1977) [referring to *Porreca v. Porreca*, 8 Ariz.App. 394, 446 P.2d 500 (1968)]:

> *Porreca, supra*, recognized the sound public policy involved in fixed-term rehabilitative spousal maintenance awards which, under appropriate circumstances, may provide an incentive for one receiving spousal maintenance payments to use diligence in procuring the requisite training and skills so as to become self-sustaining.

*However, this underlying public policy must be balanced with some realistic appraisal of the probabilities that the receiving spouse will in fact subsequently be able to support herself in some reasonable approximation of the standard of living established during the marriage, especially when a marriage of long-term duration is involved and the employment history shows a long-term absence of the spouse from the labor market with the lack of a presently existing employment skill. . . . It might well be that prior to the expiration of the three year term set in the maintenance award, circumstances will develop which demonstrate that, contrary to the reasonable expectations and notwithstanding a maximum good faith effort on the part of the appellant-wife, she will be unable to secure employment or the amount realized by her from any employment obtained will not be sufficient to furnish support reasonably comparable to the standard of living established during the marriage . . . and in order to meet such an eventuality, the trial court should have reserved jurisdiction to extend in time, as well as to increase or decrease in amount, the award here involved* (emphasis added).

In the present case, the trial judge stated in the decree that he was making the one-year award "for the purpose of allowing Petitioner to complete her education and to make adjustments in her style of living." We recognize the incentive inherent in the statute, which is designed to encourage the spouse receiving maintenance to seek appropriate employment. At the same time we cannot ignore the fact that appellee was building a prosperous law practice for 23 years while appellant was a homemaker, raising three children and compiling no employment record. In addition, it is quite apparent that our society is, in many respects, youth-oriented. It may well be that appellant will not be successful in finding employment even after obtaining her degree.

Considering all the circumstances and particularly appellant's age, lack of a work record, and the duration of the marriage, we hold that it was an abuse of discretion to automatically terminate maintenance after one year without reserving jurisdiction to modify and extend maintenance if later circumstances so dictated. Consequently, we hold that appellant is entitled to an additional award of two years maintenance at $1,000 per month, and we remand the case for the purpose of determining, under all the criteria previously discussed, whether present circumstances may warrant an extension of maintenance.

## II. EXCLUSION OF ACCOUNTS RECEIVABLE

■ Appellant is correct in her assertion that the accounts receivable of appellee's professional law corporation, as of the date of the decree, are a marital asset and must be included in distribution of community property. *In re the Marriage of Goldstein,* 120 Ariz. 23, 583 P.2d 1343 (1978). Undisputed testimony established that the accounts receivable amounted to $53,537.45. In view of our decision in *Goldstein, supra,* appellant is entitled to a credit of $26,768.72 and we remand to the trial court for proceedings consistent with this position. ,

## III. VALUATION OF THE TEXAS PROPERTY

■ After lengthy testimony, the trial court valued certain community property in Texas at $49,366.00, the figure suggested by appellee, and awarded the property to appellee. Appellant complains that the trial court erred in not basing the value on a speculative price per acre times the total acreage, minus the unpaid balance on the acreage, thereby taking into account the amount already paid in reducing the balance owing. If such a method were utilized, the community interest in the property would be approximately $83,804.00. The court heard detailed, expert testimony concerning the barren, arid nature of the property, totally unimproved at the time of trial, and the fact that only a few acres had been sold in almost a year on the market.

Additional testimony indicated that the property might be worth between $15–20 an acre (or less) if it could be sold at all. The trial court accepted appellee's evaluation of the property, which was considerably higher than that of the expert witness. We are reluctant to indulge in speculation as to what the land might be worth, if it could be sold at all, and see no error in the trial court's finding.

## IV. CARS PURCHASED FROM COMMUNITY FUNDS

Appellant claims that the gifts of two cars, one to appellee's legal secretary of 22 years and the other to their daughter, constitute disbursement of community funds without her consent or knowledge and should be charged entirely to appellee's portion of the community assets. We do not agree. There was testimony that the car for the secretary was intended as a bonus for many years of loyal service. Appellee received the secretary's old car in exchange. Under A.R.S. § 25–211 as it existed when the gift was made, the husband had the right to dispose of community personalty. Occupying a position analogous to that of a trustee, he also bore the burden of justifying his management of the business. The trial court apparently was satisfied that the gift was in furtherance of appellee's business and we shall not disturb that ruling. *Spector v. Spector*, 94 Ariz. 175, 382 P.2d 659 (1963).

Likewise, there was ample testimony to the effect that appellant knew her husband intended to give a car to their daughter and made no objection at the time. Appellant complains, however, that she believed the car to be a gift from appellee's separate funds and not chargeable to the community. In view of the conflicting testimony on the matter, including the fact that appellee was voluntarily paying certain expenses of his grown daughters while the divorce was pending, we find no error.

## V. ARREARAGES IN PENDENTE LITE

We find no merit in appellant's request for $650 in arrearages for support *pendente lite.* Testimony clearly established that appellant had in her possession a check for $700 from appellee and cashed it following the original hearing on the order to show cause in 1973. Appellee considered this the first payment for support *pendente lite* and appellant lodged no complaint until the trial in 1975. The trial judge obviously concluded there was no payment due and we concur.

## VI. OFFSETTING CREDITS FOR TRANSFER OF CERTAIN COMMUNITY FUNDS

Appellant takes issue with a minute order of February 26, 1975, in which the trial judge allowed appellee to withdraw $8,993.00 from a community savings account to pay bills of his professional law corporation. Testimony established that the debt paid was a community debt; consequently, appellant suffered no detriment.

Next, appellant asserts that the trial court did not take into account the sum of $3,875.00 purportedly paid to appellee and emanating from community investments in real estate. At the trial there was proof offered to show a check in that amount had been sent to appellee, but appellee denied having received it and the drawer testified that he had not received the cancelled check. The trial court heard all this testimony and we simply cannot say that the judge did not take this amount into consideration.

Finally, appellant maintains that certain stock awarded to her should have been given a zero value instead of the $10,000 assigned by the trial court. This contention flies in the face of appellant's *own testimony* that she believed the value to be $20,000. Neither do we accept appellant's argument that appellee, who received the stock in a closely held corporation in exchange for legal services, "stipulated" during the trial that appellant could have the stock at zero value. Appellee stated that he believed the stock to be worthless and that appellant could have it at zero value

*provided she would relieve him of the obligation to perform further legal services for the corporation.* We find no testimony indicating appellant's agreement to do this and the court obviously did not consider this a binding "stipulation." In the midst of this conflict and appellant's complete about-face concerning the value of the stock, we find no abuse of discretion.

## VII. LACK OF OPPORTUNITY TO BE HEARD

■ Appellant claims injury in the amount of $5,000 due to lack of opportunity to appear at a hearing on April 23, 1976, that "changed" a judgment signed on February 27, 1976. This case presents one of the most intricate procedural labyrinths to confront this court in recent times. For the sake of brevity and clarity, we shall not follow the entire trial, which consisted on two occasions of suspending appeals and revesting jurisdiction in the trial court.

We begin with the order of February 23, 1976, following a hearing to which all parties were privy. The order of February 23 stated that for the purposes of appeal, the judgment of June 4, 1975, was the final judgment in the case.

On February 27, however, the trial judge inadvertently signed a modified judgment presented to him by appellant's counsel, the effect of which was to increase the cash award to appellant by $5,000. An appeal was then taken. Having noticed the error, the judge conferred with the Court of Appeals and succeeded in having all parties stipulate to the revesting of jurisdiction in the trial court to clarify the matter.

Counsel for appellant concedes that the judge called him on April 23, 1976, and informed him that he wished the parties to appear before him that day to resolve the matter. In his affidavit counsel further states that he told the judge he could not appear on that date and requested that a later date be set and that opposing counsel be required to submit memoranda on the matter. Counsel states that he was under the impression that no hearing would be held that day.

Nonetheless, the trial court proceeded with the hearing and made a minute entry to the effect that the court had inadvertently signed appellant's modified judgment on February 27, that said judgment was never meant to be and was not part of the record, and that the final judgment in the matter was that of June 4, 1975, as affirmed by the order of February 23, 1976. The record reflects no argument, memoranda, or any action whatsoever except this clarification and correction. The minute entry was reduced to an order on May 12.

Since the trial court erroneously signed the judgment of February 27, we do not see how appellant's technical absence (although counsel was aware the judge wanted to proceed on that date) worked a deprivation. Appellant was fully aware of the order of February 23, in which the court unequivocally declared the June 4, 1975 judgment to be final. The hearing of April 23, 1976, of which counsel was in fact apprised, regardless of his mistaken impression as to a presumed postponement, amounted to nothing more than a ministerial function to correct a clerical error. We find no denial of due process.

## VIII. NATURE OF THE MESA PROPERTY

■ The final issue raised by appellant concerns certain property in Mesa awarded to appellant at a value of $150,000. Appellant claims that the trial court erred in classifying this as community property, that she bought it with separate funds and never intended it to be community property.

As with several other issues raised on this appeal, there is conflicting evidence both as to the source of the funds used to purchase the property and the contemplated nature of the property. Having examined the record, we cannot say that the court had no competent evidence from which to conclude that this was intended to be community property.

Of particular significance is a series of four deeds, executed simultaneously, the last of which conveyed the property to the

parties as tenants in common. Evidence was also adduced as to the existence of two other deeds, recorded some seven years later, which also conveyed the property to the parties as tenants in common. Appellant admits signing the deeds but claims she was fraudulently induced to do so and did not actually realize what she was signing. Appellee presented evidence that the reason for the circuitous series of deeds was that he wished to claim a veteran's tax exemption and could not do so with that much property in his name. The trial judge was not convinced that the property was intended to be appellant's separate property from the outset and there is ample evidence to sustain such a conclusion.

 Similarly, we reject appellant's alternative appeal for a $15,000 lien against the property based on a purported expenditure from separate funds to improve the property. Testimony established that income from appellant's separate property in Tacoma, Washington, was commingled with community funds in a community checking account. Various expenses, including improvements to community property, were paid from this account. In the absence of an agreement for reimbursement, we must presume that the expenditure was intended to benefit the community, *Baum v. Baum*, 120 Ariz. 140, 584 P.2d 604 (App.1978).

### THE CROSS-APPEAL

Appellee contends that the award of $15,000 attorney's fees to appellant is unjustified in view of her financial resources. It is well settled that the amount of attorney's fees is left to the sound discretion of the trial court. *Burkhardt v. Burkhardt*, 109 Ariz. 419, 510 P.2d 735 (1973). Pretrial hearings and extensive discovery lasted more than a year and the trial consumed twelve days. The judge, having heard testimony from appellant's attorney as to the number of hours spent on the case, explicitly stated that he made the award because of lengthy discovery needed to locate appellee's assets. We find no abuse of discretion.

The case is reversed and remanded for proceedings consistent with this opinion as to the issues of spousal maintenance and accounts receivable. On all other points, the judgment of the trial court is affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN, J., concur.

*Note*: FRANK X. GORDON, Jr., Justice, did not participate in the determination of this matter.