745 P.2d 196

**Hazel B. SNOW, Petitioner–Appellant,**

**v.**

**Rondal R. SNOW, Respondent–Appellee.**

**No. 1 CA–CIV 9172.**

Court of Appeals of Arizona, Division 1, Department A.

Oct. 27, 1987.

Stephen J. Green, Phoenix, for petitioner-appellant.

T.H. Geurin, Jr. and John R. Fox, Phoenix, for respondent-appellee.

OPINION

CONTRERAS, Judge.

This is an appeal from the trial court's order dismissing appellant's (Wife's) petition which sought to modify the marital dissolution decree by continuing appellee's (Husband's) obligation to pay spousal maintenance beyond the date originally provided for its expiration. The issue is whether the trial court had legal authority to entertain Wife's petition for modification under the circumstances of this case. We conclude the trial court lacked authority to modify the decree of dissolution because Husband's spousal maintenance obligation constitutes a lump sum award. As such, it is not subject to modification even upon a showing of changed circumstances except possibly in the event of the death of either party or the remarriage of the spouse receiving maintenance.

The pertinent facts are not in dispute. Wife filed a petition for dissolution of marriage on December 9, 1983. In her petition she alleged she was unable to support herself through appropriate employment and requested "a reasonable sum as and for spousal maintenance...." Husband executed and filed a "waiver or acceptance of process by spouse" on December 23, 1983, and his default was entered on May 9, 1984. On June 1, 1984, the superior court entered a decree of dissolution of marriage

on which the Husband had signified his approval as to form. The decree divided the couple's property and debts, awarded custody of the parties' child to Wife, and further provided:

IT IS FURTHER ORDERED that Respondent [Husband] shall pay to Petitioner [Wife] the sum of $150.00 per week as and for spousal maintenance, payable every Friday, commencing on the first aforesaid Friday occurring after the date of execution of this Decree and continuing for a period of two (2) years. Said payments shall be made through the Clerk of the Superior Court, and Respondent shall pay the $1.00 per month fee for this service.

On April 28, 1986, Wife filed a petition to modify spousal maintenance under the decree of dissolution. The petition alleged that since the entry of the decree Wife had become completely disabled, with no substantial present or future prospects for employment, and had incurred and would continue to incur extraordinary medical expenses and expenses for the support and education of the parties' child. Wife also alleged on information and belief that Husband's income had increased. Wife alleged that these changes in circumstances were "substantial and continuing," and asked the court to make the spousal maintenance provision of the decree permanent or substantially extend it, either at its present rate or the rate provided by the court's maintenance guidelines.

Husband then filed a motion to dismiss the petition, contending that the duration and amount of the decree's two-year spousal maintenance award was *res judicata,* and that the court had no jurisdiction to modify it. Following oral argument, the trial court took Husband's motion under advisement and later granted the motion to dismiss. The Wife brought this appeal from the trial court's formal order of dismissal.

Wife contends on appeal that the trial court erred in dismissing her petition to modify spousal maintenance. She acknowledges the indisputable fact that the original decree of dissolution provided for weekly payments of fixed sums over a fixed period of time. However, she argues that since the decree did not affirmatively preclude modification of Husband's spousal maintenance obligations, the trial court had power pursuant to A.R.S. §§ 25–317(F) and 25–327(A) to modify the decree as to future maintenance installments "upon a showing of changed circumstances which are substantial and continuing." A.R.S. § 25–327(A).

In response Husband argues that under *Cummings v. Lockwood,* 84 Ariz. 335, 327 P.2d 1012 (1958) and cases following it, a fixed or lump sum spousal maintenance award payable in installments over a fixed period of time falls within an implied exception to the superior court's statutory post-decree powers, and cannot be modified. Husband contends that the spousal maintenance award in the instant case falls within the *Cummings* rule, and that the trial court correctly dismissed Wife's petition for modification. Husband asserts the better rule is that a decree of dissolution which orders fixed spousal maintenance installments over a fixed period of time cannot be modified absent language specifically permitting future modification. In addition, Husband contends that because Wife had the initial burden of proving her need for spousal maintenance and was represented by counsel, Wife should have pressed for language in the decree reserving jurisdiction to modify the maintenance award. Finally, Husband asserts that the particular change of circumstances on which Wife based her petition for modification was foreseeable at the time the decree of dissolution was entered, and that it therefore cannot support the modification Wife was seeking.

We emphasize that the issue presented in this case is whether the trial court correctly determined that it lacked authority to entertain Wife's petition for modification. In this regard we point out that the trial court did not hear evidence or consider the question of whether there existed substantial and continuing changed circumstances justifying modification of the maintenance award under A.R.S. § 25–327(A). Accord-

ingly, we do not address Husband's contention that Wife failed to make the requisite showing because the alleged changed circumstances were foreseeable at the time of the decree. *See generally Chaney v. Chaney,* 145 Ariz. 23, 699 P.2d 398 (App.1985); *Marquez v. Marquez,* 132 Ariz. 593, 647 P.2d 1191 (App.1982); *Linton v. Linton,* 17 Ariz.App. 560, 499 P.2d 174 (1972). We also note that Husband has never contended that Wife's spousal maintenance award constituted a part of the overall consideration for the parties' property settlement. *See States v. States,* 124 Ariz. 189, 603 P.2d 81 (1979).

The leading Arizona decision on the question of modifiability of fixed or lump sum spousal maintenance awards is *Cummings v. Lockwood.* In that case the divorce decree ordered the husband to pay the wife $75 per month beginning September 15, 1957, "for a period of six (6) months only as and for alimony payments." Two days before the last payment was due, the wife filed a petition seeking to increase her alimony award to $150 per month for an indefinite period of time on the ground that she had been seriously injured and had undergone foot surgery. The trial court increased the alimony payments to $100 per month "until further order of court." The husband filed a petition for writ of prohibition with our supreme court. Relief was granted and the supreme court held that the trial court lacked authority under former A.R.S. § 25–321 to modify the original alimony award. The court noted that under former A.R.S. § 25–319 the trial court had authority to award the wife alimony in a lump sum to be paid in installments, and that the original decree had made such an award.

The court further determined that because the wife had received a lump sum alimony award, the trial court lacked statutory authority to modify the award after the divorce decree became final. The court stated:

> We hold that § 25–321, relating to the power of the court from the time after entry of final judgment to alter, amend or revise the decree, relating to alimony, should be construed as impliedly except-

ing from its operation in this respect the right of the court to alter, amend or revise a decree of divorce where an award has been made of gross alimony or alimony in one sum payable in installments. If § 25–321 is not so construed then § 25–319 does not mean anything when it provides that alimony may be in one sum.

*Id.* 84 Ariz. at 338–39, 327 P.2d at 1015.

It is clear from reading *Cummings* that the purpose of allowing alimony in gross or in one sum payable by installments is to define and fix with finality the scope of the rights and obligations of the parties so that the ties between them can be. completely severed and they can face the future with certainty knowing what adjustments they will be required to make. The supreme court in *Cummings* concluded its opinion:

> We therefore hold the decree of divorce entered in this action defines and limits the rights of the parties with such completeness and finality as to be clearly capable of and intended as a present vesting of the award of the support and maintenance to petitioner's former wife, and cannot be modified under the provisions of § 25–321.

In *Fye v. Zigoures,* 114 Ariz. 579, 562 P.2d 1077 (App.1977) Division Two of this court determined that although the provisions of present A.R.S. § 25–319(B) no longer expressly authorize the court to grant spousal maintenance in gross or lump sum payment, this clearly may be done under the present statute. Additionally, the court concluded that the legislature's 1973 amendments to Arizona's dissolution statutes had altered the *Cummings* rule by causing lump sum alimony awards to be terminated upon the death of either party or the remarriage of the party receiving maintenance. The court noted that under new § 25–327(B) enacted in 1973, the obligation to pay future maintenance was automatically terminated upon either party's death or the remarriage of the party receiving maintenance unless otherwise agreed in writing or expressly provided in the decree. The court further held that A.R.S. § 25–327(B) was intended to apply

to all future maintenance obligations whether periodic or lump sum. The court affirmed the *Cummings* holding by stating that "[t]his interpretation does not frustrate the policy and purpose behind a lump sum award of maintenance since it does not greatly disturb the finality of the award." *Fye v. Zigoures*, 114 Ariz. at 581, 562 P.2d at 1079.

In *Lindsay v. Lindsay*, 115 Ariz. 322, 565 P.2d 199 (App.1977), Division One of this court considered a decree of dissolution which found the wife was entitled to spousal maintenance "for a limited adjustment period," and awarded $400 per month for three years. On direct appeal from the decree, the wife contended that under the circumstances of the case, the trial court abused its discretion in failing to provide for future modification of the maintenance award. Before considering the wife's contention, this court determined "that the maintenance award here involved constitutes a lump sum award not subject to being modified in the exercise of the court's continuing jurisdiction...." *Id.* at 325, 565 P.2d at 202. It reasoned that:

> [e]xcept to the extent that lump sum or gross amount awards for spousal maintenance are now subject to modification (including termination) in the event of death or remarriage, [footnote omitted] it does not appear that the statutory language contained in the amended provisions of A.R.S. § 25–327 governing the modification of post–1973 spousal maintenance decrees warrants an interpretation different from that set forth in *Cummings, supra.*

*Id.* at 325, 565 P.2d at 202.

Division Two of this court has disagreed with Division One's determination in *Lindsay v. Lindsay. See Raley v. Wilber*, 122 Ariz. 336, 594 P.2d 1032 (App.1979), and *Dooley v. Dooley*, 147 Ariz. 132, 708 P.2d 1323 (App.1985). In *Raley* the parties entered into a property settlement agreement which was later incorporated into their decree of dissolution. The agreement provided that the husband was to pay the wife $400 per month for her support "for four (4) years only. Thereafter, Wife shall be entitled to no further payments from Husband for her support." The agreement further provided that the wife would be entitled to no further support if either party died or if the wife remarried before the four-year period expired. Thereafter, alleging changed circumstances, the husband petitioned for termination of his support obligation. The trial court ruled in favor of the husband and Division Two affirmed on appeal finding the provision for spousal maintenance was not a lump sum payment. The court stated that before 1973, a lump sum alimony "award conformed to this definition only if it was silent as to all contingencies ... After 1973, because A.R.S. § 25–327(B) implies modifiability for death or remarriage absent a contrary intent, a provision for spousal maintenance conforms to this definition [lump sum payment] only if it affirmatively negates modifiability for death or remarriage." *Id.* 122 Ariz. at 337, 594 P.2d at 1033. Division Two disagreed with what it termed "dictum" in *Lindsay* "that a monthly award of alimony for a fixed term without any provision for death or remarriage was a lump sum payment." *Id.* at 337, 594 P.2d at 1033.

In *Dooley v. Dooley*, 147 Ariz. 132, 708 P.2d 1323 (App.1985), Division Two implicitly followed the *Raley v. Wilber* rationale. In that case the decree of dissolution incorporated a property settlement agreement which provided that the husband would pay the wife spousal maintenance of $1,600 per month for eleven years. Although the court's opinion did not say whether the property settlement agreement contained a specific provision that husband's maintenance obligations would survive either spouse's death or wife's remarriage, the agreement provided that the provision for maintenance "under no circumstances whatsoever ... shall be subject to modification by either party...." The court affirmed the trial court's dismissal of the husband's petition for modification. It stated:

> [T]he provision in A.R.S. § 25–327 allowing the parties to agree that spousal maintenance payment will continue after death or remarriage can be read as sup-

porting the continued vitality of *Cummings* because if such payments terminate on those contingencies they are not treated as fixed sum awards and thus have always been subject to modification. By allowing the parties to provide for fixed sum awards payable in certain installments regardless of these contingencies the legislature has expressly allowed the form of agreement approved in *Cummings*. By way of dictum, this same conclusion was reached in [*Raley; Lindsay;* and *Fye* ]. [citations omitted.]

147 Ariz. 132, 133, 708 P.2d 1323, 1324.

Although we acknowledge that Division Two disagreed with Division One's decision in *Lindsay v. Lindsay* when it authored both *Raley v. Wilber* and *Dooley v. Dooley,* it is our opinion that *Lindsay v. Lindsay* and *Cummings v. Lockwood,* set forth what we believe is the better reasoned law and we adhere to the analysis, rationale, and resolution in those cases. In our opinion A.R.S. § 25–327(B) adopted by our legislature in 1973 merely expresses the public policy of this state that a spouse's obligation to pay future maintenance terminates upon the death of either party or the remarriage of the party receiving maintenance unless otherwise agreed in writing or expressly provided in the decree. After the effective date of the statute this public policy became a part of every future agreement or decree providing for payment of maintenance. It did not otherwise alter the viability or change the decisional law relative to a lump sum spousal maintenance award payable in installments over a fixed period of time.

We affirm the trial court's order dismissing Wife's petition for modification in this case. The decree of dissolution provided in clear, unequivocal language that Husband's spousal maintenance obligation be paid in installments over a fixed period of time. This constitutes a lump sum award which was not subject to modification even upon a showing of a change in circumstances, except in the event of the death of either party or the remarriage of the

spouse receiving maintenance. *Lindsay v. Lindsay; Cummings v. Lockwood.*

Affirmed.

FROEB, J., concurs.

FIDEL, Judge, dissenting:

Our domestic relations statutes give the trial court power after marital dissolution to modify the amount and duration of spousal maintenance to meet changed circumstances of the parties. A.R.S. §§ 25–327(A), 25–317(F). Does the trial court relinquish or retain this power when, in the decree of dissolution, it awards a period of spousal maintenance, but says nothing about the susceptibility of that award to future modification? Divisions One and Two of the court of appeals give contradictory answers to this question, much to the confusion of domestic relations practice in this state. We treat silence as relinquishment, *Lindsay v. Lindsay,* 115 Ariz. 322, 565 P.2d 199 (1977); Division Two treats it as retention, *Raley v. Wilber,* 122 Ariz. 336, 594 P.2d 1032 (1979). The conflict has persisted since 1979, unresolved by the supreme court, and this court now perpetuates it. Because I find our position unsound in conception and harmful in practice, I dissent.

Division One established its position on this question by dictum on an undisputed point in *Lindsay.* The issue there was whether, absent the parties' stipulation to make maintenance unmodifiable, the trial court abused its discretion by failing, when awarding a term of maintenance, to preserve its power to modify maintenance post-decree. Underlying this issue was the uncontested assumption of both parties that the trial court had forfeited such power by its silence on the subject. We decided—correctly, in my view—that a court's forfeiture of such power, absent the parties' stipulation, is generally an abuse of its discretion, 115 Ariz. at 329, 565 P.2d at 206. Yet we built this holding on the parties' joint assumption that, although the court had not expressly divested itself of its post-decree power to adjust maintenance, it had nonetheless accomplished such a divestiture by its failure to employ language that

expressly reserved the power. This assumption, without benefit of analysis, we unfortunately called "sound." 115 Ariz. at 325, 565 P.2d at 202.

*Lindsay's* dictum has been pernicious in effect because of its allocation of the consequences of unfamiliarity or oversight. Preservation of the court's statutory power to modify maintenance in Division One requires that the decree contain a rote recitation of that power. Domestic relations lawyers call this recitation "the *Lindsay* clause," and it goes something like this:

> The court expressly reserves jurisdiction to increase or decrease the amount or term of spousal maintenance if warranted by a substantial and continuing change of circumstances of either party.

A variation on this boilerplate theme preserves post-decree modification power if one knows or remembers to include it in the decree. But, as our supreme court recently reminded in another context, all of us make mistakes. *See City of Phoenix v. Geyler*, 144 Ariz. 323, 332, 697 P.2d 1073, 1082 (1985).

Many judges and court commissioners take the bench without domestic relations experience. Orientation, however extensive, is not comprehensive, and on-the-job training counts for much. A judge or commissioner unalerted to the issue would not recognize the court's need to build boilerplate into a decree to avoid the abrogation of a statutory power. A lawyer new to this area of the law might likewise overlook the need for a *"Lindsay* clause." And the risk of a judge's or lawyer's unfamiliarity or oversight pales by comparison to that of an unrepresented party. Many persons represent themselves in domestic relations proceedings and agree as part of a settlement to pay or receive a stipulated amount of maintenance for a set term. Such persons cannot be expected to know that, by failing to insist that the decree include a *"Lindsay* clause," they have forfeited a statutory right to later petition the court to alter the amount or term.

*Lindsay's* dictum was expressly rejected by Division Two in *Raley v. Wilber. Raley* subscribed to *Lindsay's* holding that a trial court should generally retain its post-decree modification power in the absence of the parties' agreement to the contrary. 122 Ariz. at 337, 594 P.2d at 1033. (In *Mori v. Mori*, 124 Ariz. 193, 196, 603 P.2d 85, 88 (1979), the supreme court reached the same conclusion.) However, under *Raley*, if the parties and the court indeed wish to foreclose the possibility of post-decree modification of maintenance, they must do so expressly within the decree; if the decree is silent on the subject, the court retains its statutory power. This approach corrects *Lindsay's* misallocation of the burden of unfamiliarity or oversight. Under *Raley* a trial court cannot unwittingly relinquish a statutory power that it generally ought to keep; it must do so expressly and deliberately. Moreover, Division Two's approach alleviates the risk that an inexpert lawyer or an unrepresented party will unknowingly accede to unmodifiable terms of maintenance. An opposing party or counsel seeking to make maintenance unmodifiable must do so expressly, thereby giving notice.

The members of the majority in this case, endorsing *Lindsay's* approach as superior to *Raley's*, claim to find support in *Cummings v. Lockwood*, 84 Ariz. 335, 327 P.2d 1012 (1958). This, I believe, is wrong. *Cummings*, which preceded both *Lindsay* and *Raley*, compels neither one approach nor the other. Although it holds, as do *Lindsay* and *Raley*, that parties may agree to fixed, unmodifiable terms of maintenance, it says nothing as to whether they should be presumed to have done so by silence on the subject or must, rather, be required to do so expressly.

I generally subscribe, for the reasons stated above, to Division Two's approach; but I would not entirely follow *Raley*. The court there held that parties cannot insulate maintenance provisions from post-decree modification unless they expressly foreclose the possibility of modification for any reason, including death or remarriage. 122 Ariz. at 337, 594 P.2d at 1033. I don't believe we ought to go so far. In my view, death and remarriage are logically severable from each other and from other types of changed circumstances as components

of a stipulation on the subject of modifiability. One divorcing couple might wish to stipulate to an amount and term of maintenance terminable upon the death of the receiving spouse, but unmodifiable for any other reason. Another couple might wish to make maintenance payments terminable upon the remarriage of the receiving spouse, but unmodifiable for any other reason. A third couple might wish to leave maintenance terminable upon either death or remarriage, but expressly foreclose modification for any change of circumstances other than those two. *Raley* appears to preclude such options. I would leave parties free to enter such agreements so long as they do so expressly.

I recognize that an abandonment of *Lindsay*, if retroactive, would disrupt the expectations of parties to certain fixed term maintenance agreements. I refer to those whose lawyers, following *Lindsay*, drafted stipulated decrees silent as to modifiability with the deliberate purpose to make maintenance unmodifiable. The answer to this concern is not, however, to extend the dominion of *Lindsay's* dictum in perpetuity; rather, this is a case for prospective overruling. To overrule *Lindsay's* dictum prospectively would satisfy what are known as "the reliance, purpose, and inequity" criteria. It would avoid inequity to those who had previously relied upon that case without "affect[ing] adversely the purpose behind the new rule." *See Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 504, 733 P.2d 1073, 1087 (1987); *Mark Lighting Fixture Co. v. General Electric Supply Co.*, 155 Ariz. 27, 30, 745 P.2d 85, 88 (1987).

I would like finally to address the harmful implications of the unresolved conflict between Divisions One and Two. In a special concurring opinion in *Senor T's Restaurant v. Industrial Com'n*, 131 Ariz. 389, 393–394, 641 P.2d 877, 882–83 (App. 1981), reversed on other grounds, 131 Ariz. 360, 641 P.2d 848 (1982), Judge Froeb wrote,

> I would hold that given conflicting decisions between Division One and Division Two, the Superior Court must follow the decision of the division in which it is located.

Among his reasons for this position were that

> predictability in the decisional process is greatly enhanced when it is known to the Superior Court that the decision of the division in which it is located will provide the controlling precedent.

*Id.* The Supreme Court, while overruling this court's holding in *Senor T's*, indicated its "general agreement with ... the opinions expressed in Judge Froeb's special concurrence." 131 Ariz. at 355–366, n. 2, 641 P.2d at 853–854, n. 2.

One hopes that members of the superior court adopt the view Judge Froeb expressed in *Senor T's*, even though there is as yet only dictum on the subject. Even if they do, however, so long as the split between divisions remains, parties to stipulated maintenance agreements cannot be sanguine that their intentions as to future modifiability will be enforced. One reason is that parties move. A dissolution decree entered in the superior court in Pima County might become the subject of a modification petition heard in a Maricopa or Yavapai County division. Additionally, there are case transfers between divisions of the court of appeals. As an example, in *Dooley v. Dooley*, 147 Ariz. 132, 708 P.2d 1323 (App.1985), a case cited by the majority, parties to a dissolution decree entered in the Superior Court of Maricopa County processed a modification proceeding in the same court and then briefed their appeal to Division One. The case was assigned to a panel of judges of *Division Two*, who, pursuant to A.R.S. § 12–120(E), sat as *Division One* to decide it.

We can only bring true predictability to the law in this area with a prospective overruling of *Lindsay* or *Raley*. I would overrule *Lindsay*, though, for the reasons indicated above, I would not go as far as *Raley*, and I would hold that the court retains its statutory power to modify spousal maintenance post-decree, unless, in the decree of dissolution, it expressly relinquishes that power.