565 P.2d 199

Wilma E. LINDSAY, Appellant,

v.

Walter L. LINDSAY, Appellee.

No. 1 CA–CIV 3204.

Court of Appeals of Arizona, Division 1, Department A.

May 19, 1977.

Sullivan & Brook, P. C. by James F. Brook, Phoenix, for appellant.

Rihr & Varbel by Duane Varbel, Phoenix, for appellee.

HAIRE, Judge.

This is an appeal from a decree of dissolution. Appellant-wife contends that:

1. The trial judge abused his discretion in failing to award her spousal maintenance for life or until her remarriage, or at the very least for a period substantially in excess of three years, reserving jurisdiction to modify the time period.

2. The trial judge abused his discretion in failing to award the appellant-wife her interest in community funds resulting from the sale of the community's interest in an aircraft which the appellee-husband dissipated subsequent to the commencement of the dissolution action and prior to the trial thereof.

The decree involved in this appeal was entered by the trial court on May 28, 1975. Therefore, the questions raised by appellant are governed by the 1973 revisions to Arizona's marital dissolution statutes. With this in mind, we now consider appellant's first contention.

In the decree, the trial judge found that appellant was entitled to spousal maintenance "for a limited adjustment period". The actual maintenance award, insofar as pertinent to this appeal, was for "the sum of Four Hundred ($400.00) Dollars per month for a period of three (3) years." Appellant argues that under the circumstances presented in this case, the fact that

this maintenance award will end automatically in three years and is not subject to modification so as to extend the termination date, constitutes an abuse of discretion. This argument assumes that the award is for a "lump sum" and that prior Arizona case law precluding the modification of lump sum spousal maintenance awards remains applicable to decrees entered subsequent to the 1973 statutory amendments. We are of the opinion that appellant's underlying assumptions are sound. While the present provisions of A.R.S. § 25–319 B [1] no longer expressly allow the court to grant spousal maintenance in gross or in lump sum payment, it has been held that under the present statute this clearly may be done. *Fye v. Zigoures*, 114 Ariz.App. ——, 562 P.2d 1077 (filed January 13, 1977).

Under the pre-1973 statutes, case law had developed which held that awards providing for maintenance to be paid in installments for a specified number of months or years were lump sum awards, and that lump sum awards were not subject to modification even upon a showing of a change in circumstances. This holding was first stated in *Cummings v. Lockwood*, 84 Ariz. 335, 327 P.2d 1012 (1958), in which the purpose of providing for a gross and unmodifiable amount of alimony was said to be "to define and fix with finality the scope of the rights and obligations of the parties . . . so that ties between them can be completely severed and they can face with certainty the measure of the final adjustment which they will be required to make." (Citing and quoting from *Ziegenbein v. Damme*, 138 Neb. 320, 292 N.W. 921 (1940)); *see also Barnett v. Barnett*, 95 Ariz. 226, 388 P.2d 433 (1964); *Lloyd v. Lloyd*, 23 Ariz.App. 376, 533 P.2d 684 (1975) (decree entered under pre-1973 law); *Bennett v. Bennett*, 17 Ariz.App. 101, 495 P.2d 871 (1972); *Bartholomew v. Superior Court*, 4 Ariz.App. 50, 417 P.2d 563 (1966).

Except to the extent that lump sum or gross amount awards for spousal maintenance are now subject to modification (including termination) in the event of death or remarriage,[2] it does not appear that the statutory language contained in the amended provisions of A.R.S. § 25–327 governing the modification of post-1973 spousal maintenance decrees warrants an interpretation different from that set forth in *Cummings, supra*. Having concluded that the maintenance award here involved constitutes a lump sum award not subject to being modified in the exercise of the court's continuing jurisdiction, we now consider the merits of appellant's contention that the trial judge abused his discretion in limiting the maintenance to a three year period, without preserving modification jurisdiction.

At the time of the entry of this decree, the factors to be considered in initially determining whether an award for maintenance should be entered, and in establishing the amount and duration of such an award if entered, were expressed in A.R.S. § 25–319:[3]

"25–319. Maintenance; computation factors.

"A. In a proceeding for dissolution of marriage or legal separation, or a proceeding for maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the ab-

1. The pertinent language in A.R.S. § 25–319 B now reads as follows:

   "B. The maintenance order shall be *in such amounts and for such periods of time* as the court deems just, without regard to marital misconduct, and after considering all relevant factors . . . ." (Emphasis added).
   Prior to the 1973 amendments, the pertinent statutory language was in A.R.S. § 25–319 A, and provided:
   "A. . . . the court may adjudge that the amount be paid in one sum or in installments. . . ."

2. *See* A.R.S. § 25–327 B; *Fye v. Zigoures, supra; Fawkes v. Fawkes*, 115 Ariz. 384, 565 P.2d 890 (filed February 22, 1977). Under the pre-1973 cases, the inclusion of a provision terminating spousal maintenance upon the remarriage of the receiving spouse precluded treatment of the award as a lump sum, unmodifiable award. *Hayne v. Hayne*, 9 Ariz.App. 99, 449 P.2d 633 (1969); *Porreca v. Porreca*, 8 Ariz.App. 394, 446 P.2d 500 (1968).

3. In 1976 A.R.S. § 25–319 was amended in minor detail not pertinent to the issues presented in this appeal.

sent spouse, the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:

"1. Lacks sufficient property, including property apportioned to him, to provide for his reasonable needs; and

"2. Is unable to support himself through appropriate employment or is the custodian of a child whose age or condition is such that the custodian should not be required to seek employment outside the home.

"B. The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, and after considering all relevant factors, including:

"1. The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently.

"2. The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment.

"3. The standard of living established during the marriage.

"4. The duration of the marriage.

"5. The age and the physical and emotional condition of the spouse seeking maintenance.

"6. The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

"7. Excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common."

Although the court did not set forth in its decree findings which included the pre-conditions required by subparagraphs 1 and 2 of subsection A, A.R.S. § 25–319, the evidence clearly would have justified such findings, and no issue has been presented on this appeal relating to such failure. The word "support" as used in § 25–319 A(2) cannot be given an unqualified meaning, but rather must be interpreted in light of the preexisting circumstances of the parties involved. That this is the legislative intent is fortified by a consideration of the provisions of § 25–319 B(3) which require that in setting the amount of the support order, the court must consider "the standard of living established during the marriage". *See Casper v. Casper,* 510 S.W.2d 253 (Ky. 1974), interpreting substantially identical statutory provisions of the Uniform Marriage and Divorce Act. We will therefore proceed to a consideration of whether, applying the factors enumerated in subsection B relating to the amount and duration of the award, the trial judge abused his discretion in entering the limited spousal maintenance award here involved.

The facts show that appellant was 49 years old at the time of the trial on this matter, and had not been employed since 1951, before the birth of the couple's first child. Her only employment had consisted of clerical work in a factory office. She was a high school graduate, and had attended business school for several months in the late 1940's. She testified that she had sought employment since the separation of the parties, and that she was willing to work in almost any capacity, even at less than minimum wages, but that she had been unsuccessful in finding employment. There was no testimony that she was presently involved in any educational or training programs, nor was there any evidence which would indicate that her employability would be increased at the end of three years.

At the time of the dissolution the appellee-husband was employed as a travelling sales executive for a large corporation, with a substantial expense account and late-model automobile provided by his employer. In addition to the expense account, which paid all his expenses when he was travelling (average of two days per week), his gross monthly income was $1,583.34, with deductions, *inter alia,* for a vested pension and profit-sharing plan.

After the dissolution, the appellant-wife was left with no income producing property other than possibly the cash awarded to her. She received one-half of the net proceeds from the sale of the family home, amounting to approximately $5,000, a 1971 Plymouth automobile worth $1,000, cash in checking and savings accounts of $237.27, and cash value in life insurance policies of $513. Despite repeated efforts on her part during the pendency of the dissolution proceedings, she had been unable to obtain employment.

█ While the discretion vested in the trial court to determine a wife's need for maintenance is broad, it cannot be exercised arbitrarily. Rather, there must be support in the record for the trial judge's determination. *O'Connor v. O'Connor*, 16 Ariz.App. 599, 494 P.2d 1344 (1972).

*Porreca v. Porreca*, 8 Ariz.App. 394, 446 P.2d 500 (1968), relied on by the court in *O'Connor, supra*, presented a situation similar in some respects to that in the case at hand. While *Porreca* is a pre-1973 decision, the factors which the court considered are consistent with those now set forth in A.R.S. § 25–319 B. In *Porreca*, the Court of Appeals found an abuse of discretion where the trial court had entered a decree which would absolutely terminate alimony at the end of two years, based upon the premise that the wife should be employed by that time. The court's discussion there is particularly helpful in analyzing the questions presented here:

"The question before us, then, resolves itself to this: Did the trial court abuse its discretion in terminating alimony at the end of two years because at the end of that period plaintiff could be able to obtain a teaching job? It is the opinion of this court that the two-year limitation on alimony imposed by the trial court in its decree was an abuse of discretion.

"It is true that where the wife has the facilities at her disposal which are capable of producing income sufficient to maintain her in the social and economic position which she enjoyed at the time of the divorce, then alimony, in such a case,

would not be necessary, and the former husband should not be required to pay it. *Franklin v. Franklin*, 75 Ariz. 151, 253 P.2d 337 (1953).

"It is, furthermore, a sound public policy which would provide an incentive for one receiving alimony payments to use diligence in procuring the requisite training and skills to the end that she may eventually become self-sustaining. However, it must be remembered that one who does so improve herself, and who does obtain employment as a result of this improvement, does not thereby lose all entitlement to alimony payments. *Norton v. Norton*, 101 Ariz. 444, 420 P.2d 578 (1966)." *Porreca v. Porreca*, 8 Ariz. App. at 397, 446 P.2d at 503.

Of similar import is the discussion in a more recent decision applying the post-1973 statutory provisions, *Oppenheimer v. Oppenheimer*, 22 Ariz.App. 238, 526 P.2d 762 (1974) which, while recognizing that encouraging the wife to seek employment is a worthy purpose, stated that a judgment could not be based upon "mere hopes and speculative expectations". The court in *Oppenheimer* relied upon a California decision, *In Re Rosan*, 24 Cal.App.3d 885, 101 Cal. Rptr. 295 (1972), noting that Arizona's new marriage dissolution law is patterned upon the Uniform Marriage and Divorce Act, which in turn was based upon the spirit of California's dissolution law. In its discussion, the Arizona Court of Appeals stated:

"In *Rosan* the trial court provided for automatic reduction of spousal maintenance in order to encourage the wife to seek employment and avoid future modification hearings. The appellate court, while recognizing that the purposes of the trial court were worthy, held the judgment invalid since it was based upon mere hopes and speculative expectations and not upon the evidence. As the court stated:

'Here, the evidence is that Wife was not employed during the marriage except for a very brief period; there was no evidence that she had experience, training or education to qualify her for

suitable employment; she was not employed at the time of trial and, indeed, was just about to undertake a course of instruction in real estate and some college courses to prepare herself for employment. Under these circumstances her future earnings and earning capacity were completely unknown, and such unknown future developments are better left to modification proceedings which have been provided for that very purpose, than to automatic reduction provisions operative one and two years, respectively, in the future.

\* \* \* \* \* \*

'Much of what we have said in reference to those portions of the support order hereinabove considered is applicable also to that part of the judgment ordering absolute termination of spousal support at the end of three years.' 24 Cal.App.3d at 896–897, 101 Cal.Rptr. at 303." *Oppenheimer v. Oppenheimer*, 22 Ariz.App. at 243, 526 P.2d at 767.

The Arizona court concluded, in *Oppenheimer*, by stating that the trial court *must* reserve jurisdiction to extend the period of spousal maintenance where the wife's ability to become self-supporting is uncertain:

"The Court in *Rosan* recognizes that the trial court may order the termination of all spousal maintenance in a *Rosan*-type situation after the end of a specified number of years *if the court also reserves jurisdiction to extend the period should hopes and expectations prove to be unfounded.* Such an order would make it incumbent upon the wife to petition the court for continuance of the support and place upon her the burden of proving justification for an extension. But, *Rosan* does not mandate such an order. Rather, the court may enter a continuing order of support and place the burden upon the husband to petition for modification." (Emphasis added). Id. 22 Ariz. App. at 243, 526 P.2d at 767.

Of similar import is *In Re Dennis*, 35 Cal.App.3d 279, 110 Cal.Rptr. 619 (1973), in which the court reversed a decree terminating maintenance at the end of four years in a situation similar to the case at hand, where the wife was 50 years old and had no employable skills.

We agree with the reasoning expressed in the above decisions. However, while the amount of the award here involved based upon the facts is on the low side, and we have some concern that the court should have awarded a permanent award of unlimited duration rather than the fixed term rehabilitative type of award which was in fact entered, we are unwilling to hold that these factors in and of themselves justify a finding of an abuse of the trial court's discretion. In this connection, we note that initially the appellant will have available to her to supplement the $400 monthly support order, cash financial resources in excess of $8500.[4]

*Porreca, supra,* recognized the sound public policy involved in fixed-term rehabilitative spousal maintenance awards which, under appropriate circumstances, may provide an incentive for one receiving spousal maintenance payments to use diligence in procuring the requisite training and skills so as to become self-sustaining. However, this underlying public policy must be balanced with some realistic appraisal of the probabilities that the receiving spouse will in fact subsequently be able to support herself in some reasonable approximation of the standard of living established during the marriage, especially when a marriage of long-term duration is involved and the employment history shows a long-term absence of the spouse from the labor market with the lack of a presently existing employment skill. These factors are present in this case, and their presence would appear to outweigh the recognized rehabilitative or incentive values inherent in a fixed-term spousal maintenance award, unless an accommodation can be made which will provide the benefits of the fixed-term award, while at the same time preserving some

4. This figure includes an allowance for the wife's share in the sale proceeds of a communi- ty interest in an aircraft, as hereinafter discussed in this opinion.

protection for the receiving spouse. This can be done by a preservation in the fixed-term award of the court's jurisdiction to modify the award if an extension is subsequently shown to be necessary. We therefore hold that the failure of the trial judge to include provisions in the spousal maintenance award which would allow for its future modification as to amount and duration constituted an abuse of discretion. It might well be that prior to the expiration of the three year term set in the maintenance award, circumstances will develop which demonstrate that, contrary to the reasonable expectations and notwithstanding a maximum good faith effort on the part of the appellant-wife, she will be unable to secure employment or the amount realized by her from any employment obtained will not be sufficient to furnish support reasonably comparable to the standard of living established during the marriage. In our opinion the showing of such a state of circumstances would constitute a showing of "changed circumstances" as required by A.R.S. § 25–327 A,[5] and in order to meet such an eventuality, the trial court should have reserved jurisdiction to extend in time, as well as to increase or decrease in amount, the award here involved.

We now consider appellant's contention concerning the disposition by the trial court of the proceeds from the sale of a community interest in an airplane. In the decree, the court stated:

"The Court further finds that the Respondent need not account to the Petitioner for the community interest represented by the proceeds from the sale of that certain twin engine aircraft in July, 1974, or pay the same to her; . . . ."

During the pendency of the dissolution proceedings, and without the appellant's knowledge, the husband had sold the community's interest in an airplane. When the appellant became aware of the sale through information received from a friend, she filed a petition pursuant to A.R.S. § 25–315 B seeking to have the husband restrained from disposing of the aircraft's sale proceeds except in the usual course of business or for necessities. This request was denied, with an indication from the court that it would take any disposition of property by the husband into account at the forthcoming trial.

■ At the trial the appellee-husband testified that the sale price of this airplane was "approximately $19,500", and that there was "about $5,000 or $6,000 due on it", but he did not produce his documents or memoranda relating to the sale as requested in a subpoena duces tecum. He also testified that he "lost" the community's share of the proceeds (he and appellant had owned one-half interest in the airplane in partnership with another person) "in gambling". His testimony also indicated that subsequent to the separation and prior to the sale of the aircraft he had, without his wife's knowledge, used $1,711.00 of an income tax refund check jointly received by the parties to pay debts against the plane. Under these circumstances, we agree with appellant that the court's decision was inequitable and unjust in failing to award Mrs. Lindsay her share of the proceeds of the sale of this community asset, and constituted an abuse of discretion.

---

5. "§ 25–327. Modification and termination of provisions for maintenance, support and property disposition

"A. Except as otherwise provided in subsection F of § 25–317, the provisions of any decree respecting maintenance or support may be modified only as to installments accruing subsequent to the motion for modification and only upon a showing of changed circumstances which are substantial and continuing. The provisions as to property disposition may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state.

"B. Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.

"C. Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a minor child are not terminated by the death of a parent obligated to support the child. When a parent obligated to pay support dies, the amount of support may be modified, revoked or commuted to a lump sum payment to the extent just and appropriate in the circumstances."

Under A.R.S. § 25–318, the trial court is to:

". . . divide the community, joint tenancy, and other property held in common equitably, though not necessarily in kind, without regard to marital misconduct. * * * Nothing in this section shall prevent the court from considering excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common."

A.R.S. § 25–319 B(7) also requires that the court consider:

"7. Excessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common"

as a factor in making its award of maintenance.

 While the trial court in a dissolution proceeding is not required to divide the community property exactly equally, *Kamrath v. Kamrath*, 17 Ariz.App. 394, 498 P.2d 468 (1972) and has wide discretion, it cannot without reason create a gross disparity, or make its award arbitrarily. Sound discretion has been held to mean that, in the absence of sound reasons appearing in the record which justify a contrary result, the apportionment of the community estate upon dissolution must be substantially equal, *Hatch v. Hatch*, 113 Ariz. 130, 547 P.2d 1044 (1976); *Britz v. Britz*, 95 Ariz. 247, 389 P.2d 123 (1964). When consideration is given to the spousal maintenance award entered by the trial court, which under the circumstances was minimal both in amount and duration, it cannot be presumed that the trial judge considered the failure to award the wife her share of the sale proceeds as a factor increasing the amount of the spousal maintenance award to her.

Upon remand, the decree for dissolution of marriage shall be modified by (1) inserting an appropriate provision preserving the modification jurisdiction of the trial court relating to the spousal maintenance award, and (2) inserting a provision awarding to the appellant the sum of $3,625 representing her share of the proceeds of sale of the community's interest in the aircraft. Except as so modified, the decree is affirmed.

NELSON, P. J., Department A, and DONOFRIO, J., concur.