592 P.2d 771

Clarence F. SOMMERFIELD, Appellant,

v.

Alice M. SOMMERFIELD, Appellee.

No. 13928.

Supreme Court of Arizona,
In Division.

March 15, 1979.

Cunningham, Goodson & Tiffany by James W. Ryan, Phoenix, for appellant.

Smith & Feola by Steven Feola, Phoenix, for appellee.

HAYS, Justice.

The appellant, Clarence F. Sommerfield (husband), appeals from those portions of a decree of dissolution of marriage that per-

tain to the distribution of property and award of spousal maintenance. We have jurisdiction pursuant to 17A A.R.S. Rules of the Supreme Court, rule 47(e)(5). We affirm.

The parties were married on October 7, 1961 in Wisconsin where they were living at the time. They moved to Arizona in October of 1974. At the time of trial, appellant was approximately 67 years old while the appellee, Alice M. Sommerfield (wife), was 54 years old. No children were born to or adopted by them. Additional pertinent facts will be introduced as necessary in the context of particular arguments.

Husband first contends that the trial court erred in ruling as a matter of law that a Scottsdale residence was community property or the community had a substantial interest therein, and that title was held by the community and subsequently transferred without valid consideration. Prior to the move to Arizona, a lot in Scottsdale was purchased in 1971 with the intention of building a home thereon. Title to the property was taken in the name of the husband's separate business, Sonny's El Dorado, Inc., a Wisconsin corporation which operated a supper club. When the finance company refused to accept a foreign corporation as mortgagor for the house, title was transferred to the husband and wife, with both husband and wife assuming full liability for the mortgage. About one and one-half years later, on February 21, 1973, the husband and wife transferred the property back to El Dorado, and the corporation transferred it to the husband on October 12, 1973.

■ Before we discuss the status of the real estate as separate or community property, one matter needs clarification. The wife argues that, as a foreign corporation not licensed to do business in Arizona, the husband's corporation, the original grantee of the Scottsdale real estate, cannot hold or own property in this state. Therefore, the property belongs to the marital community because the transfer by the husband and wife to the corporation is void. This argument ignores an inherent inconsistency, for if the corporation could not have validly accepted title from the husband and wife, then it could not have validly taken title from the original sellers. The problem disappears, however, with the recognition that under our law something more than an isolated single act must be found before it will be held that transactions entered into by a foreign corporation unauthorized to do business in Arizona are void. *Norman v. Del Elia*, 111 Ariz. 480, 483, 533 P.2d 537, 540 (1975); *accord, Pepper & Tanner, Inc. v. Shamrock Broadcasting, Inc.*, 563 F.2d 391, 394 (9th Cir. 1977).

■ On appeal we view all evidence and reasonable conclusions therefrom in the light most favorable to supporting the decision of the trial court regarding the nature of property as community or separate. *Nace v. Nace*, 104 Ariz. 20, 23, 448 P.2d 76, 79 (1968). We begin with the presumption that property acquired by either spouse during marriage is community property. *Armer v. Armer*, 105 Ariz. 284, 287, 463 P.2d 818, 821 (1970); A.R.S. § 25–211. This presumption applies irrespective of which spouse holds legal title *Armer, supra; Arizona Central Credit Union v. Holden*, 6 Ariz.App. 310, 313, 432 P.2d 276, 279 (1967).

■ The husband testified that the corporation had purchased the lot upon which the home was built, but as the record is utterly devoid of evidence showing the source of funds for the mortgage payments, we may assume that the husband and wife, as mortgagors, made the payments out of community property. Thus, the determination of the trial judge that the community had a substantial interest in the Scottsdale property accords with this assumption. Counsel for the husband, however, directs our attention to certain testimony in the record as supportive of the proposition that the funds for building the house came from separate property, but we find the language cited vague and ambiguous. In no way does it embody the clear and convincing evidence needed to rebut the presumption of community property. *Armer, supra.* Moreover, where title to real property is taken in the names of both husband and

wife, even though the source of funds for the purchase of the property is separate property of one spouse, a presumption arises that the parties intended to own the property as community property. *Becchelli v. Becchelli,* 109 Ariz. 229, 232–33, 508 P.2d 59, 62–63 (1973); *Noble v. Noble,* 26 Ariz. App. 89, 93, 546 P.2d 358, 362 (1976). Once fixed, the property retains its character as separate or community until changed by agreement of the parties or by operation of law. *Armer, supra.*

■ The husband next contends that there is no evidence in the record to support the court's finding that a $30,000 bank account which he opened in his name at the Valley National Bank was community property. We can state with certainty only that the evidence concerning this bank account is incomplete, confusing, and contradictory.

At the first day of trial, the following testimony was elicited from the husband concerning the bank account.

Q When did that Valley National Bank account exist, wherein it was 30,000 dollars?

A When we first arrived in Arizona.

Q Okay. Then, what happened to that bank account?

A I had to use a lot to live on. I was maintaining two homes for the first part of 74—the first 8 months making payments on two homes and keeping up two homes totally. I had no income.

On the second day of trial the husband testified "I didn't actually have 30,000 in the bank. I had 30,000 net proceeds from the sale of my home in Milwaukee." Difficulty in discerning how the $30,000 could have been used to maintain the Milwaukee home and at the same time have been the proceeds from the sale of that house, together with other inconsistencies in the husband's testimony, apparently led the trial court to reject all of his testimony about the source of funds of the bank account and to apply the presumption of community property as no other evidence had been introduced.

■ As his final grounds for appeal, the husband contests the award of spousal maintenance as excessive and without any factual basis. In the first place the trial court has broad discretion in its determination of a reasonable award. *Burkhardt v. Burkhardt,* 109 Ariz. 419, 510 P.2d 735 (1973). The spousal maintenance award constituted less than 25% of the husband's income. It provided for payment to the wife of $700 a month for life or until she remarried.

The trial court found that "the wife lacks sufficient property apportioned to her to provide for her reasonable needs and was unable to support herself fully in the manner in which she should be maintained." These findings incorporate the prerequisites for spousal maintenance set forth by A.R.S. § 25–319(A). *Lindsay v. Lindsay,* 115 Ariz. 322, 326, 565 P.2d 199, 203 (App.1977), construed "support" as used by § 25–319(A) in a relative sense to "be interpreted in light of the preexisting circumstances of the parties involved." To that end, the provisions of § 25–319(B), which outline factors a trial court should consider in determining the amount and duration of the award, become relevant. Hence, we decline to read § 25–319(A)(2) as foreclosing the possibility of any maintenance whatsoever unless a spouse is totally incapable of self-support. *Accord, Casper v. Casper,* 510 S.W.2d 253 (Ky.1974) (interpreting virtually identical language under Kentucky law).

*Lindsay* recognized that the public policy favoring fixed-term spousal maintenance awards so as to encourage the party receiving the award to become self-sustaining by using diligence in procuring training and skills "must be balanced with some realistic appraisal of the probabilities that the receiving spouse will in fact subsequently be able to support herself in some reasonable approximation of the standard of living established during the marriage." 115 Ariz. at 328, 565 P.2d at 205. Here the husband and wife had been married for about 15 years. The wife was 54 years old at the time the dissolution was filed. Since the separation she has been employed as a dining-room hostess earning $334 a month (net

income). Her salary reflects her lack of skills and experience as she had worked only sporadically during the marriage, and at the request of her husband had refrained entirely from employment outside of the home when they moved to Arizona. She has, however, been attending school to improve her typing skills so that she could qualify for a better job. The husband has a yearly income of approximately $39,000, principally from the sale of the supper club. Consideration of all these factors is directed by § 25–319(B). Moreover, § 25–319(B)(7) also focuses the court's attention on "[e]xcessive or abnormal expenditures, destruction, concealment or fraudulent disposition of community, joint tenancy and other property held in common." The trial court specifically found that "the husband disposed of at least $20,000 of said $30,000 [bank account] in violation of the community interest of the wife." Thus, taking all the circumstances into account, including the trial court's firsthand opportunity to evaluate the testimony and demeanor of the husband, and reading the record as a whole, we cannot say as a matter of law that the trial court has abused its discretion.

The judgment is affirmed.

CAMERON, C. J., and GORDON, J., concurring.