778 P.2d 1212

**In re the Marriage of Harold R. SCHROEDER, Petitioner/Appellant,**

v.

**Bernadine Marie SCHROEDER, Respondent/Appellee.**

**No. CV–88–0284–T/AP.**

Supreme Court of Arizona, En Banc.

July 18, 1989.

Shultz, Worischeck & Lane by Michael G. Sullivan, Phoenix, for petitioner/appellant.

Machmer & Schlosser by Sheilah A. Lavelle, Robert H. Schlosser, Phoenix, for respondent/appellee.

## OPINION

ALLEN G. MINKER, Superior Court Judge.

Petitioner Harold Schroeder appeals from the trial court's order modifying an award of four years of spousal maintenance to respondent Bernadine Schroeder. Respondent moved to extend spousal maintenance at the end of the fourth year of payment and the court ordered that spousal maintenance continue until death, remarriage, or further order of the court.

We granted a petition for transfer of this case from the court of appeals to review and resolve inconsistent opinions by the two divisions of the court of appeals.

The principal issue addressed in this decision is: May a court modify the length of a spousal maintenance order that awards a monthly amount for a limited period of time, but that does not state whether the award is modifiable? We find that if a decree is silent as to the court's power to modify spousal maintenance, a court may consider extending the length of maintenance pursuant to A.R.S. § 25–327.

## MODIFICATION AUTHORITY

Our present modification statute, A.R.S. § 25–327(A), reads as follows:

A. Except as otherwise provided in subsection F of § 25–317, the provisions of any decree respecting maintenance or support may be modified only as to installments accruing subsequent to notice of the motion for modification to the opposing party and only upon a showing of changed circumstances which are substantial and continuing. The provisions as to property disposition may not be revoked or modified, unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state.

A.R.S. § 25–319 recites the factors a court must consider in deciding whether to award spousal maintenance, and in what amount. Paragraph B states:

B. The maintenance order shall be in such amounts and for such periods of time as the court deems just....

A.R.S. § 25–317(F), dealing with separation agreements, states:

F. Except for terms concerning the maintenance of either party and the support, custody or visitation of children, entry of the decree shall thereafter preclude the modification of the terms of the decree and the property settlement agreement, if any, set forth or incorporated by reference therein.[1]

Thus, the superior court is empowered by statute to modify a spousal maintenance award while installment payments are being made.

## LUMP SUM PAYMENTS

In 1958, this court limited the superior court's power to modify an alimony allowance in some situations. The case of *Cummings v. Lockwood*, 84 Ariz. 335, 327 P.2d 1012 (1958), addressed a decree that awarded alimony installments of $75 per month "for a period of six (6) months only." Two days before the last payment was due, the wife sought a modification of the alimony award, including an increase in the amount and the length of alimony payments. The husband appealed the trial court's order granting both an increase in the amount of alimony and the length of payments. The relevant statute at that time—A.R.S. § 25–321—provided:

The court may from time to time after entry of final judgment, on petition of either party, amend, revise and alter the portions of the decree which relate to payment of money for the support and maintenance of the wife ... as may be just....

This court also considered former A.R.S. § 25–319, which concerned the court's power to award child support and spousal maintenance. That statute provided: "The court may adjudge that the amount be paid in one sum or in installments."

In refusing to modify the decree, the *Cummings* court held that when an alimony/spousal maintenance award was expressed in terms of a gross sum, including one sum payable in installments, the award was not modifiable upon a later petition. The court quoted the Nebraska Supreme Court, which held that the purpose of a gross amount of alimony "is to define and fix with finality the scope of the rights and the obligations of the parties." *Cummings*, 84 Ariz. at 339, 327 P.2d at 1015–16, *citing Ziegenbein v. Damme*, 138 Neb. 320, 323, 292 N.W. 921, 923 (1940). *Cummings* further borrowed from *Ziegenbein* to hold that an unqualified, gross alimony award "is such a definite and final adjustment of mutual rights and obligations as to be capable of a present vesting and to constitute an absolute judgment, and the court cannot subsequently modify the amount...." *Cummings*, 84 Ariz. at 340, 327 P.2d at 1016 (citing *Ziegenbein*, 138 Neb. at 323–24, 292 N.W. at 923).

Thus, *Cummings* distinguishes between spousal maintenance awards fixing the total amount of maintenance to be paid, in either a lump sum or in installments, and decrees mandating monthly spousal maintenance payments without fixing the total obligation. *Cummings* turned on the use of the word "only" in the decree following six months of alimony payments.

Following *Cummings*, the two court of appeals divisions have reviewed numerous cases that, like our case, do not neatly fall within one category or the other. They neither state the total amount of spousal maintenance to be paid as one measurable and fixed amount, nor address awards of periodic monthly payments without end. Most typically, the court of appeals has dealt with a spousal maintenance award written in terms of a monthly sum to be paid over a given number of months. Also, these decrees, whether following a settlement agreement or a trial to the court, are silent concerning the court's ability to subsequently modify the awards.

---

1. Because the award in this case was clearly identified as spousal maintenance, we do not concern ourselves in this opinion with how to distinguish property settlement installment payments (which are not modifiable) from spousal maintenance, when the decree does not state.

In *Lindsay v. Lindsay*, 115 Ariz. 322, 565 P.2d 199 (App.1977), Division One reviewed a decree awarding "the sum of Four Hundred ($400.00) Dollars per month for a period of three (3) years." The court of appeals reversed the trial court for failing to include in the decree language explicitly giving the court jurisdiction to modify and extend the award if the wife became unable to secure employment or provide adequately for her own expenses during the three years. 115 Ariz. at 328–29, 565 P.2d at 205–06. *Lindsay* assumed that, unless explicit language allowing for future court modification accompanied the decree, if a trial judge ordered spousal maintenance "for a limited adjustment period," the court would lack jurisdiction later to make such a modification.

Division One recently reviewed and approved *Lindsay* in *Snow v. Snow*, 155 Ariz. 138, 745 P.2d 196 (App.1987) (Fidel, J. dissenting). The *Snow* decree awarded the wife spousal maintenance of $150 per week "for a period of two (2) years." The court entered the decree subsequent to the husband's waiver of service of process and default. A divided court held the trial court retained no jurisdiction to modify the maintenance order, absent specific language in the decree giving the court jurisdiction. 155 Ariz. at 142, 745 P.2d at 200. In his dissent, Judge Fidel found the result an untenable forfeiture of the court's power, and a likely conversion of oversight into a legal right.

The holdings from Division Two are contrary to those of Division One because of Division Two's definition of "lump sum." In Division Two cases, a spousal maintenance award may be considered a lump sum, and therefore unmodifiable, only if the award is for a fixed amount and is not contingent upon any future event. For example, in *Raley v. Wilber*, 122 Ariz. 336, 594 P.2d 1032 (App.1979), the court reviewed a decree providing for $400–per-month spousal maintenance for a period of

"four (4) years only." The agreement further provided that "if either party dies or if Wife remarries prior to the expiration of the four (4) year period, Wife shall be entitled to no further support from Husband." 122 Ariz. at 336, 594 P.2d at 1032. The court analyzed the 1973 amendments to the statutes, and in particular A.R.S. § 25–327(B), which provides:

> Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.

The *Raley* court found that because the spousal maintenance award was not unconditional, it could be modified within the four-year period. In *Raley* it was terminated. The *Raley* court held that all post-1973 awards would be modifiable unless the decree expressly excluded modification, even in the event of death or remarriage. 122 Ariz. at 337, 594 P.2d at 1033.

In *Dooley v. Dooley*, 147 Ariz. 132, 708 P.2d 1323 (App.1985), Division Two refused to find *Cummings* repealed by the 1973 statutory amendments.[2] *Dooley* holds that where a decree is considered a lump sum amount of support, and is contingent upon no events, it may not be modified. However, if the statutory conditions of death or remarriage, or any other contingencies, terminate payment, the award cannot be considered a lump sum, and the court will maintain jurisdiction to modify the award. 147 Ariz. at 133, 708 P.2d at 1324.

*Dooley* further illustrates the need to resolve the conflict between the Divisions. Although A.R.S. § 12–120(C) and (D) sets forth which counties constitute Division One and Division Two, A.R.S. § 12–120(E) allows for a case arising in one Division to be decided by judges of the other Division.

In our case, spousal maintenance was included in a "Property Settlement Agreement" signed by the parties and incorporat-

---

2. *Fye v. Zigoures*, 114 Ariz. 579, 562 P.2d 1077 (App.1977), showed Division Two's earlier belief that the law regarding lump sums was affected by the 1973 statutes, A.R.S. § 25–327(B), read in conjunction with A.R.S. § 25–319. *Fye* held that

spousal maintenance would be terminated upon the wife's death, even though the decree stated that maintenance should not be subject to modification.

ed by reference into the decree. The spousal maintenance provision reads:

> HUSBAND agrees to pay to wife, through the Clerk of the Superior Court of Maricopa County, Arizona, as and for spousal maintenance for WIFE, the sum of SIX HUNDRED ($600.00) DOLLARS per month, payable on the first day of the month following the execution of this agreement, and monthly thereafter. HUSBAND's obligation to pay spousal maintenance shall terminate forty-eight (48) months after the date of this agreement, the death of either party, or the order of a court of competent jurisdiction."

Under Division One cases, such an award is a nonmodifiable lump sum because it does not contain specific language reserving to the court the power to modify.[3]

Under Division Two cases, the award is modifiable, because it is not unconditional. The total amount of the husband's obligation is neither fixed nor certain, but instead may vary upon death of either spouse or a court order.

## ANALYSIS

Our analysis must also look at the purpose for spousal maintenance, the justifiable expectations of the parties, and the trial court's obligation to give effect to its orders.

### A. *The Purpose of Spousal Maintenance*

The purposes of spousal maintenance may vary. Under the statute in effect at the time of the Schroeders' dissolution—A.R.S. § 25–319(A)—maintenance could be ordered only upon the court's finding that the spouse seeking maintenance:

1. Lacks sufficient property, including property apportioned to such spouse, to provide for his or her reasonable needs; and

2. Is unable to support himself or herself through appropriate employment or is the custodian of a child whose age or condition is such that the custodian should not be required to seek employment outside the home or lacks earning ability in the labor market adequate to support himself or herself.

When amended in 1987, the statute was liberalized in favor of awarding maintenance. Instead of requiring each of the two conditions above, the statute allows an award where either of the two was true, or where the spouse seeking maintenance either:

3. Contributed to the educational opportunities of the other spouse. [or]

4. Had a marriage of long duration and is of an age which may preclude the possibility of gaining employment adequate to support himself or herself.

In this jurisdiction, then, the purpose or purposes for spousal maintenance may be defined or redefined by our legislature. Viewed in the larger context historically and geographically, the purposes of spousal maintenance have changed over the years. An examination of present-day awards either inside or outside of Arizona does not reveal a unity of purpose. Historically, alimony was tied to marital misconduct.[4] The word "alimony" itself carries a connotation of misconduct, and for that reason it has largely been replaced by "spousal maintenance."

Current commentators often cite, and debate, compensation for contributions made during the marriage, loss of earning capacity, and protection of homemaking and child-rearing roles as rationales for present spousal support awards.[5] While the ratio-

---

**3.** Although it could be argued that the final phrase of the provision does refer to and reserve that power.

**4.** *Browne on Divorce* (1892).

**5.** Krauskopf, *Maintenance: A Decade of Development,* 50 Mo.L.Rev. 259, 260–61 (1985). At pages 292–301, the author also divides the cases into three categories: long-term marriages with

traditional homemaker (over 20 years), medium length marriages (10–20 years), and short-term marriages (under 10 years). We realize that we address not only marriages of different lengths, but also "with different generations of women each with differing abilities." Sackett and Munyan, *Alimony: A Retreat from Traditional Concepts of Spousal Support,* 35 Drake L.Rev. 297, 319 (1985–86).

nale for alimony at one time was an offended morality, under "no-fault divorce" it has sought a more pragmatic form of justice based on financial needs. Thus, rationales for current alimony also include custodial support for pre-school children, traditional support aimed toward self-sufficiency and impaired or disabled earning capacity.[6]

Up to the 1960s, alimony was often perceived as an automatic award to a woman because the opportunities for economic equality were not present.[7] Even if the award was not automatic, in Arizona the function of maintenance was sometimes described simply as providing support for a wife as nearly as possible to the standard of living enjoyed during marriage, to keep her from becoming dependent upon public support. *Nace v. Nace,* 107 Ariz. 411, 489 P.2d 48 (1971); *Kamrath v. Kamrath,* 17 Ariz.App. 394, 498 P.2d 468 (1972).

That view of maintenance was revamped with a changing job market in a changing society, at least where those changes were presumed to occur. Maintenance, once seen as automatic, was greatly restricted by such statutes as Arizona's 1973 version of A.R.S. § 25–319(A). *See, e.g., Deatherage v. Deatherage,* 140 Ariz. 317, 681 P.2d 469 (App.1984) (restricting maintenance only to situations where necessary).

Over the last two decades, both inside Arizona and elsewhere, two trends have competed with each other. One defines the purpose of alimony as rehabilitative, restricting it to a limited amount of time for a spouse to become self-sufficient. The other returns to indefinite alimony, believing that following the dissolution of a long-standing marriage, one spouse will never be self-supporting, at least as compared to the lifestyle during marriage. Commentators claim that each is the current—and proper—trend.[8]

Although not all spousal maintenance orders serve identical values at the present time, the current aim is to achieve independence for both parties and to require an effort toward independence by the party requesting maintenance. The temporary award of maintenance in its present form reflects both of these values. In most cases of temporary maintenance, the key issue for the parties and the court will be whether that independence will be achieved by a good faith effort.

### B. *The Justifiable Expectations of the Parties*

The justifiable expectations of the parties may either be set forth in writing or not. Where a settlement agreement states that maintenance will be awarded for a period of time to allow one spouse to gain vocational training, the spouses' expectations will be clear. The same can be said when, following a trial, the court states that it is awarding maintenance to allow one spouse to complete training or an educational degree. Awards like these engender legitimate expectations that a genuine effort will be made to obtain skills that will lead to self-sufficiency.

In cases such as the one before us, however, the expectations of the parties are unstated. Here, a petition requested that the court "[a]ward the respondent the sum of $600.00 per month as and for spousal maintenance for a period of four (4) years or until she dies or remarries." The expectations of the parties at that time are speculative. The Property Settlement Agreement does not reveal the answer. At the time of the decree, Bernadine was neither present in the court nor represented by counsel. The same may hold true for most cases that do not result in a contested trial.

Even if not speculative, the expectations of the spouses may be far from like-minded. The paying spouse's expectation may be to achieve certainty regarding the obligation. The expectation of the receiving spouse may be to achieve self-sufficiency.

---

6. Weitzman and Dixon, *The Alimony Myth: Does No–Fault Divorce Make a Difference?,* 14 Fam.L.Q. 141 (1980).

7. Schiller, "Alimony—Should Marital Misbehavior Be a Factor?," *Alimony—New Strategies for*

*Pursuit and Defense,* 1988 A.B.A. Sec. on Fam. Law 10, 13.

8. *Alimony—New Strategies.*

We acknowledge, though, that the parties may have other considerations in mind. For example, maintenance may be bargained for as a tool to divide community property, or agreed to by an uncounseled spouse believing no alternative exists.

How can the court best give effect to the justifiable expectations of the parties? We recognize a strong argument favoring non-modifiability for the paying spouse who wishes the obligation to be certain and within his or her control. That factor was weighed and discussed in *Fobes v. Fobes*, 124 Wis.2d 72, 368 N.W.2d 643 (1985). There, the Wisconsin Supreme Court affirmed a trial court's extension of three years' maintenance to permanent maintenance.

The parties stipulated to three years of maintenance at the time of divorce so Mrs. Fobes could obtain education. After the divorce, Mrs. Fobes trained to become a licensed practical nurse. She was unsuccessful in completing her practicum, and employment as a private nurse left her substantially short of self-sufficiency. 124 Wis.2d at 75, 368 N.W.2d at 644. The Wisconsin Supreme Court weighed the benefit of certainty if a maintenance stipulation was held non-modifiable, but, citing from *Dixon v. Dixon*, 107 Wis.2d 492, 508, 319 N.W.2d 846, 854 (1982), held "[t]here is nothing ... [in the statute] to indicate that the legislature intended the goals of economic certainty and reduced litigation to be achieved at the expense of spouses whose needs might change after judgment is entered." *Fobes*, 124 Wis.2d at 78, 368 N.W.2d at 645. The court agreed that Mrs. Fobes' inability to become self-supporting constituted a substantial change in circumstances. Twelve other states have adopted the position that the decree itself need not contain express language to extend or modify spousal maintenance for a court to exercise jurisdiction. Annotation, *Power To Modify Spousal Support Award For A Limited Term, Issued In Conjunction With Divorce, So As To Extend The Term Or Make The Award Permanent*, 62 A.L.R. 4th 180, 207 (1988).

We agree with the majority holding in *Fobes*. The paying spouse's expectation of certainty is only justifiable to the extent that foreseen contingencies are susceptible to elimination. Granting the paying spouse certainty of obligation where the receiving spouse is less than sure of completing training, locating employment, and earning suitable wages, may promote something other than the *justified* expectations of the paying spouse. We find, moreover, that when we examine not only the expectations of the paying spouse, but the justified expectations of *both* spouses, they can best be given effect by allowing a court to consider whether a substantial and continuing change of circumstances has prevented those expectations from being realized. If so, a modification of the length of the award may promote the original expectations.

## C. The Court's Obligation

The courts are obliged to ensure that payment of spousal maintenance is consistent with court orders and the purposes underlying spousal maintenance. If the purpose of spousal maintenance is rehabilitation, the duration of the award at the time of decree represents a prediction of when self-sufficiency will be accomplished. Should events subsequent to the decree occur—unanticipated at the time of the decree—that alter the time when self-sufficiency can be achieved, the trial court properly may decide that a substantial and continuing change in circumstances has occurred. We see no reason to empower a court to make such a finding where the issue is the *amount* of maintenance (*e.g.*, where the paying spouse suffers a job layoff), yet not empower a court to make such a finding when the issue is *duration* of the award. In each case, the court focuses on the original aim and circumstances of the award. We do not take the position regarding duration of the award, just as we have not regarding the amount, that the effects of all changing circumstances be borne or enjoyed by the receiving spouse. We find that the court's obligation to give effect to its spousal maintenance awards

includes the power to modify upon a change of circumstances.

Today we hold that the purposes for spousal maintenance, the justifiable expectations of the parties, and the obligations of the court are best realized by the following rule: if a decree is silent as to modifiability, the trial court may, within the period of time periodic payments are decreed, modify the decree to either shorten or lengthen the term of periodic payments upon a showing of a substantial and continuing change of circumstances affecting the purpose underlying the original spousal maintenance order. By this ruling, we modify *Cummings* to this extent: to be considered a non-modifiable lump sum payment, spousal maintenance must be delineated as non-modifiable in the decree; otherwise, the decree will be subject to the provisions of A.R.S. §§ 25–327 and 25–319. *Lindsay v. Lindsay* and the majority opinion in *Snow v. Snow* are disapproved to the extent they are contrary to our holding in this case.

## SUFFICIENCY OF THE EVIDENCE

Appellant argues that even if the court has jurisdiction to modify the length of spousal maintenance payments, insufficient evidence was presented to the trial court to justify such a change.

The evidence showed that Harold and Bernadine Schroeder were married in 1955. At the time of dissolution in 1983, both were 50 years old. Before marriage, Bernadine worked as a telephone operator, but after marriage, she concentrated her efforts on raising their five children. In 1973, to assist in family finances, Bernadine attempted to work in temporary positions, but was able to find employment only in unskilled positions, such as running a postage meter. Following the dissolution, Bernadine found employment as a filing clerk, a position she held at the time of the motion to modify spousal maintenance. Her gross pay was $950 per month. Because she could not afford to remain in the home she received as part of the community property division, Bernadine moved into a mobile home. Although she lived in a

mobile home and spent $150 per month on food, she testified that her expenses exceeded her income.

In 1987, Bernadine was diagnosed as having cancer, and underwent a modified radical mastectomy. Following surgery, she received chemotherapy treatments. She testified that although her health did not prevent her from continuing work, it did require additional out-of-pocket expenditures.

At the time of dissolution, Harold earned approximately $39,000 per year as an engineer. By 1987, his salary increased to $41,000 per year. He remarried after the dissolution. At the time of the 1987 hearing, he and his current wife, who also was employed, lived in a home requiring monthly payments of over $900. Together they spent over $400 per month on food.

The trial court found that Bernadine's "ill health and her inability to sustain meaningful employment" constituted a substantial and continuing change in circumstances. It ordered the $600 per month spousal maintenance remain in effect until death, remarriage or further court order. The question whether a substantial and continuing change in circumstances occurred pursuant to A.R.S. §§ 25–327 and 25–319 was a question of fact. "The decision as to the sufficiency of changed circumstances to support a modification lies within the sound discretion of the trial court and will not be disturbed on appeal unless it is abused." *Fletcher v. Fletcher*, 137 Ariz. 497, 497, 671 P.2d 938, 938 (App. 1983).

We do not find the trial court's ruling unsupported by the evidence or an abuse of discretion. Implicit in the trial court's ruling is that four years' spousal maintenance was intended to support Bernadine's transitional growth of earning capacity. Also implicit was the expectation, unrealized in this case, that after four years of transitional support, Bernadine would find and keep a job that would support her.

## RETROACTIVE APPLICATION

Harold also claims the trial judge's order was retroactive, and therefore imper-

missible. The decree of dissolution was signed in September 1983. The agreement incorporated into it required spousal maintenance payments for 48 months. In August 1987, Bernadine filed her petition for order to show cause to modify the spousal maintenance award. The trial court's order granting the petition is dated February 2, 1988, and made the modification effective the first day of the first month following the filing of the petition for order to show cause.

A.R.S. § 25–327(A) provides that modification to spousal maintenance awards is effective only for "installments accruing subsequent to the notice of the motion for modification...." We find the award was made prospective to the filing of the motion. The date of the motion to modify the decree, not the court's subsequent order itself, is the established dividing date between retroactive and prospective application. *Adair v. Superior Court,* 44 Ariz. 139, 142–43, 33 P.2d 995, 996–97 (1934); *Johnson v. Johnson,* 46 Ariz. 535, 540–41, 52 P.2d 1162, 1164–65 (1935). The cases cited by Harold do not hold otherwise. *See Jarvis v. Jarvis,* 27 Ariz.App. 266, 553 P.2d 1251 (1976).

Appellant also argues the trial court retroactively applied A.R.S. § 25–319(C). That section, as amended in 1987, states: "[t]he court shall maintain continuing jurisdiction over the issue of maintenance for the period of time that maintenance is awarded." However, the statute does not alter what already was the court's jurisdiction to modify spousal maintenance during the time period for which maintenance was awarded. Thus, we have no need to consider A.R.S. § 25–319(C) in deciding this case. Further, we do not consider the section's effect on agreements stating decrees are non-modifiable, if those decrees are entered after the amendment's effective date.[9]

Although our discussion adopts much of the dissent's reasoning in *Snow,* it differs on one point. Judge Fidel recommended that any opinion overruling *Lindsay* be given prospective application only. *Snow,* 155 Ariz. at 143–44, 745 P.2d at 201–02.

We disagree, instead applying our holding in this case, as well as other cases in which the petition to modify spousal maintenance is filed within the period of time spousal maintenance was ordered.

We retroactively apply this opinion for two reasons. First, what may be prospective application in cases arising in Division One trial courts may be retroactive application to cases arising in Division Two trial courts. One rule is needed for the entire state. Second, we do not believe retroactive application defeats the reasonable expectations of the parties in those counties under Division One jurisdiction. In those instances in which only one side participated in the proceedings or in the preparation of the decree, perhaps that side may have thought that silence in the decree resulted in non-modifiability. However, we do not see how such could be said for the other side.

Thus, the only reason to omit a clause of non-modifiability would be to keep the other side unalerted to future contingencies. We do not view this as the reasonable expectation of the parties. Our holding is consistent with the presumption that, unless otherwise stated, a court opinion operates retroactively as well as prospectively, as discussed in *Chevron Chemical Co. v. Superior Court,* 131 Ariz. 431, 435–36, 641 P.2d 1275, 1279–80 (1982). For these reasons, our holding today is fully retroactive.

The order of the trial court is affirmed. Pursuant to Rule 21, Rules of Civil Appellate Procedure, appellee is awarded reasonable attorneys' fees on appeal.

FELDMAN, V.C.J., MOELLER, J., and MICHAEL BROWN and ROBERT BUCHANAN, Superior Court Judges, concur.

NOTE: Justices FRANK X. GORDON, Jr., JAMES DUKE CAMERON, and WILLIAM J. HOLOHAN did not participate in this decision; pursuant to Ariz. Const. art. 6, § 3, Judge ALLEN G. MINKER of the Greenlee County Superior Court and Judges MICHAEL BROWN and ROBERT

---

**9.** Decisions holding both ways are discussed in 62 A.L.R. 4th at 226–35.

BUCHANAN of the Pima County Superior Court were designated to sit in their stead.