NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

ROBERT BALDWIN,
*Petitioner/Appellee*,

*v.*

LYNN BALDWIN,
*Respondent/Appellant*.

No. 1 CA-CV 16-0186 FC
FILED 4-20-2017

Appeal from the Superior Court in Maricopa County
No. FN2015-002466
The Honorable Ronee Korbin Steiner, Judge

**AFFIRMED**

COUNSEL

Robert Baldwin, Friday Harbor, WA
*Petitioner/Appellee*

Law Offices of David W. Dow, Phoenix
By David W. Dow
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

---

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Margaret H. Downie and Judge James P. Beene joined.

---

**J O H N S E N**, Judge:

**¶1**        Lynn Baldwin ("Wife") appeals the superior court's decree dissolving her marriage to Robert Baldwin ("Husband").  For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        The parties were married in August 2012; Husband filed a petition for dissolution in March 2015.  The superior court held a one-day trial to resolve the parties' competing claims to certain bank accounts, real property and personal property.  Following entry of the decree, Wife filed a motion for new trial, or alternatively, for judgment notwithstanding the verdict.  The superior court denied Wife's motion.

**¶3**        We have jurisdiction of Wife's timely appeal pursuant to Article 6, Section 9 of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2017) and -2101(A)(1) (2017).[1]

### DISCUSSION

**¶4**        Wife contends the superior court erred in characterizing as community property certain bank accounts, an apartment complex, and a parcel of vacant land, and in distributing some construction tools to Husband.  The rule is that "[a] spouse's real and personal property that is owned by that spouse before marriage and that is acquired by that spouse during the marriage by gift, devise or descent, and the increase, rents, issues and profits of that property, is the separate property of that spouse."  A.R.S. § 25-213(A) (2017).  Of equal importance is the principle that "[a]ll property acquired by either husband or wife during the marriage is the community property of the husband and wife except for property that is . . . [a]cquired by gift, devise or descent."  A.R.S. § 25-211(A)(1) (2017).  "We will not disturb the court's distribution of community property absent an abuse of

---

[1]        Absent material revision after the relevant date, we cite a statute's current version.

its discretion." *Hetherington v. Hetherington*, 220 Ariz. 16, 21, ¶ 18 (App. 2008).[2]

## A.     The Bank Accounts.

**¶5**          The parties presented evidence concerning three bank accounts: The "Harvard" account, a Chase Bank account and the "Yarn Place" account. Husband did not contest Wife's assertion that the Yarn Place account was her sole and separate property; the superior court found the Harvard and Chase accounts were community property.

**¶6**          Taking up the Harvard account first, Wife does not dispute that she and Husband opened the Harvard account during the marriage as a construction account to pay for improvements to the apartment complex, that the owner of the Harvard account was Harvard Courtyard, L.L.C., and that the sole members of Harvard Courtyard, L.L.C. are Husband and Wife.

**¶7**          Wife, however, argues the bulk of the monies in the Harvard account came from deposits or transfers from her sole and separate funds. At trial, she testified she deposited into the Harvard account the proceeds of her sales of jewelry, stock and life insurance, but she did not point to specific bank records showing such transfers from her sole and separate account to the Harvard account. She also conceded that earnings Husband received from working for her sister during the marriage went into the Harvard account, and that funds from the Harvard account went to pay for community expenses during the marriage. At trial, Husband offered canceled checks he wrote on his personal account to Harvard Courtyard, L.L.C.

**¶8**          As for the Chase account, Wife testified that account originally had been her sole account, but that at the suggestion of Husband's accountant, she added Husband's name to the account so that their tax refunds could be automatically transferred into the account.[3] She testified Husband had said he would agree to have his name removed from

---

[2]      On review, we view the evidence in the light most favorable to upholding the decision of the superior court regarding the characterization of the property as community or separate. *Sommerfield v. Sommerfield*, 121 Ariz. 575, 577 (1979).

[3]      Notwithstanding Wife's concession that the account was held in both parties' names, bank statements offered in evidence reflected only Wife's name.

the Chase account after the tax refunds were received, but later declined to do so. As with the Harvard account, the source of the funds in the Chase account was unclear from the evidence the parties offered at trial. Wife offered little evidence to support her contention that the account should be characterized as her sole and separate property; Husband offered little evidence to support his contention that the account was community property.

¶9        The superior court found that both the Harvard and Chase accounts were community property. It found that the parties paid community expenses from the Chase account, that Husband's earnings were placed into the two accounts, and that "[m]onies were moved between these accounts freely." In addition, the court found that Wife was unable to trace deposits of her separate funds into the accounts, and further found that, contrary to Wife's assertion, the amount of community funds deposited into the accounts was not negligible.

¶10        The record does not demonstrate an abuse of discretion by the superior court. "Where community property and separate property are commingled, the entire fund is presumed to be community property unless the separate property can be explicitly traced." *Porter v. Porter*, 67 Ariz. 273, 281 (1948); *accord Guthrie v. Guthrie*, 73 Ariz. 423, 426 (1952); *Bourne v. Lord*, 19 Ariz. App. 228, 231 (1973).

¶11        It is true, as Wife asserts, that if the amount of community funds deposited into a previously separate account is negligible compared to deposits of separate funds, the account may retain its character as separate property. *Noble v. Noble*, 26 Ariz. App. 89, 95-96 (1976). As the party seeking to rebut the presumption that arises from commingling such as occurred here, Wife bore the burden of proof by clear and satisfactory evidence. *Cooper v. Cooper*, 130 Ariz. 257, 259-60 (1981).

¶12        The record supports the superior court's conclusion that Wife did not meet her burden to rebut the presumption that the accounts were community property. Although Wife argues that she funded those accounts exclusively or substantially with her sole and separate funds, we have searched the record but are unable to discern evidence that would support her attempt to trace the funds or even to compare the respective sources of deposits into the funds.

¶13        Wife also argues that although the Chase account was in both parties' names, the account was hers before the marriage and she placed Husband's name on the account solely for tax purposes. Nevertheless, the

record supports the superior court's finding that funds in the Chase account were commingled beyond the point at which the monies could be traced.

## B.      The Apartment Complex.

**¶14**        Wife purchased an apartment complex on 36th Street in Phoenix before the marriage.  The superior court found the community contributed $426,000 in improvements to the complex during the marriage. At trial, Husband did not dispute that the property was Wife's sole and separate property, but argued that the community was entitled to a lien arising from the community's contribution to the improvements.   The superior court ruled the community was entitled to a lien of $339,184, based on the community's contributions of Husband's labor and community funds to purchase materials and equipment for the improvements.

**¶15**        Wife testified she funded the entire $426,000 in improvements using her sole and separate property and that Husband did not contribute significant labor, if any, to the improvements.  The superior court heard evidence that Husband bought some (perhaps most) of the materials and equipment used for the improvements; Wife testified she paid those expenses directly or reimbursed Husband for expenses when he wrote checks.  Husband testified he worked as a contractor on the improvements, and further testified that materials and equipment were paid for with community funds, mostly from the Harvard account.

**¶16**        When the community contributes capital to a sole and separate property, it may acquire an equitable lien against that property. *Tester v. Tester*, 123 Ariz. 41, 43 (App. 1979); *see also Drahos v. Rens*, 149 Ariz. 248, 249-50 (App. 1985).  On the other hand, if a party contesting such a lien can trace the funds and prove by clear and convincing evidence that the capital came solely from separate funds, no lien arises.  *Cf. Cooper*, 130 Ariz. at 259-60; *Noble*, 26 Ariz. App. at 95-96.

**¶17**        Wife argued that monies paid from the Harvard and Chase accounts toward the improvements originally came from her sole and separate Yarn Place account, but, as noted above, she offered insufficient evidence to allow the superior court to trace those funds.  The superior court also found that Wife offered insufficient evidence to show that she made payments directly from her Yarn Place account toward the improvements.  As the court found, the Harvard and Chase accounts were community property, and in the absence of sufficient evidence of tracing, the court did not err in concluding that the community funded the improvements to the apartment complex.  As noted, the court further found

that Husband contributed "sweat equity" to the property by acting as a contractor on the improvements.

¶18 In calculating the amount of the lien to which the community was entitled because of the improvements, the superior court correctly applied the formula set out in *Drahos*, 149 Ariz. at 250. Wife does not dispute the court's application of the formula in general, but argues the court erred because it did not consider the fact that she paid $76,000 to improve the property before the marriage. The court heard expert appraisal evidence of the value of the property at the time of the marriage and at the time of the petition. The court's findings as to the value of the property at the time of the marriage and the amount by which the property increased in value over the life of the marriage necessarily took into account the amount by which Wife's pre-marriage contribution of $76,000 in improvements actually enhanced the property.

## C. The Vacant Land.

¶19 The parties purchased a parcel of vacant land during their marriage and took title in the name of their joint company, Harvard Courtyard, L.L.C. Wife testified that the money to pay for the property came from the sale of another parcel that she owned as sole and separate property. The superior court found it was unable to trace the funds through the accounts from the sale of Wife's separate property to the purchase of the vacant land at issue.

¶20 "All property acquired by either husband or wife during the marriage is the community property of the husband and wife except for property that is . . . [a]cquired by gift, devise or descent." A.R.S. § 25-211(A)(1). Moreover, even when separate funds are used to purchase real property during the marriage, when title is taken in the names of both husband and wife, the presumption is that the property is owned by the community. *Sommerfield v. Sommerfield*, 121 Ariz. 575, 578-79 (1979). The record supports the superior court's conclusion that Wife failed to rebut the presumption that the vacant land is community property.

## D. Wife's Withdrawals from the Accounts.

¶21 It was undisputed that, at about the time the parties separated (and just before Husband filed the petition for dissolution), Wife withdrew a total of $47,786.49 from the Harvard and Chase accounts and placed the money in her Yarn Place account. The superior court found that Wife improperly withdrew those funds from the community accounts and

ordered her to reimburse Husband $23,893.25 for his share of the withdrawals.

¶22             At trial, Wife argued the monies she withdrew were in repayment of a prior loan she had made to the community. But she offered no evidence of such a loan or other evidence to support her contention that the withdrawals were intended to repay such loan. Having affirmed the court's finding that the accounts from which Wife withdrew the money were community property, we also affirm the court's order requiring Wife to pay Husband for his share of the community funds she withdrew.

### E.      The Tools.

¶23             Wife testified she purchased certain unspecified tools with her sole and separate funds. Husband testified some of the tools were his but did not specify which ones. Neither party provided an inventory or appraisal of the tools or any evidence clearly demonstrating when they were acquired or the source of the funds to acquire them. The superior court awarded two storage containers used for the Yarn Place business to Wife and all the tools to Husband as a fair and equitable distribution. We cannot conclude the court abused its discretion in those rulings.

### F.      The Denial of the Motion for a New Trial.

¶24             In her post-trial motion, Wife reiterated the arguments she made during trial. She argued the superior court disregarded evidence offered to prove that her sole and separate funds paid for the improvements to the apartment complex. She also argued the court erred in characterizing the Harvard and Chase accounts as community property. Contrary to Wife's contention, we do not see any indication in the record that the court did not consider all the exhibits Wife presented. Therefore, the court did not err by denying Wife's motion.

**CONCLUSION**

**¶25**    For the foregoing reasons, we affirm the decree and the denial of Wife's motion for a new trial.



AMY M. WOOD • Clerk of the Court
FILED:   AA