NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

KENNETH L. FELDER, *Petitioner/Appellant*,

*v.*

DEBRA S. FELDER, *Respondent/Appellee*.

No. 1 CA-CV 19-0685 FC
FILED 6-18-2020

Appeal from the Superior Court in Maricopa County
No. FN2005-000530
The Honorable Kerstin G. LeMaire, Judge

**AFFIRMED**

COUNSEL

S. Alan Cook, P.C., Phoenix
By S. Alan Cook, Sharon Ottenberg
*Counsel for Petitioner/Appellant*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge David B. Gass joined.

---

**C R U Z**, Judge:

¶1        Appellant Kenneth L. Felder ("Husband") appeals the superior court's order that declined to terminate his spousal maintenance obligation to Debra S. Felder ("Wife").[1]   For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        In 2007, Husband and Wife divorced after about twenty-nine years of marriage.  Wife sought spousal maintenance.  Husband owned and operated a furniture business, the Stool & Dinette Factory ("SDF"), and the superior court attributed a monthly salary of about $8,000 to Husband in the decree of dissolution.  The superior court found Wife's monthly income to be $2,400 from her disability benefit and an annuity, and so the court ordered Husband to pay Wife $2,800 in spousal maintenance each month until further order.

¶3        In 2013, Husband filed a petition to modify his spousal maintenance obligation, claiming his income had been substantially reduced.  Following an evidentiary hearing, the superior court reduced Husband's spousal maintenance obligation to $1,500 a month plus an additional $500 a month until an arrearage was paid.  The superior court noted there was testimony about SDF being in bankruptcy proceedings and the bankruptcy court setting his monthly salary at $2,500.  The superior court also specifically found that SDF was paying Husband's spousal maintenance obligation.  In 2014, the bankruptcy court approved SDF's

---

[1]      Wife did not file an answering brief, which we may deem a confession of reversible error.  *McDowell Mountain Ranch Cmty. Ass'n v. Simons*, 216 Ariz. 266, 269, ¶ 13 (App. 2007).  In our discretion, we decline to do so.

reorganization plan. This plan allowed Husband to take a $2,600 monthly salary.

**¶4** In 2014, Husband filed another petition to modify his spousal maintenance obligation, claiming as changed circumstance the bankruptcy court order limiting Husband's salary. Husband also argued Wife had reached retirement age, so she was now able to draw from retirement funds to help support herself. Following trial, the superior court denied Husband's petition to modify or terminate spousal maintenance, and Husband appealed. This court reversed and remanded the superior court's order, finding there was evidence of a changed circumstance in that SDF was no longer paying Husband's spousal maintenance obligation. *See Felder v. Felder*, 1 CA-CV 15-0831, 2016 WL 7093872, at *3, ¶ 13 (Ariz. App. Dec. 6, 2016) (mem. decision).

**¶5** On remand, the superior court found that the only change to Husband's income was that SDF was no longer paying his spousal support obligation. The superior court also found that Wife had dissipated all of the retirement assets she received in the divorce decree. In a June 2017 order, the superior court reduced Husband's spousal maintenance obligation to $1,000 plus $500 until his arrearage was paid. Husband did not appeal.

**¶6** Only a few months later in October 2017, Husband filed a petition to terminate spousal maintenance. Husband alleged as changed circumstances that he suffered from multiple physical health problems. Husband also contended that he was unable to earn a living from his business. Husband for the first time also claimed he had been forced to take early distribution of his social security benefits, because he had not been able to take a salary from SDF since 2015.

**¶7** The superior court held an evidentiary hearing in June 2019, after which it denied Husband's petition to terminate spousal maintenance. After an unsuccessful motion to alter/amend the order, Husband timely appealed. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(2).

## DISCUSSION

**¶8** Husband contends the superior court erred by failing to terminate the spousal maintenance award to Wife. Pursuant to A.R.S. § 25-327(A), a spousal maintenance award "may be modified or terminated only on a showing of changed circumstances that are substantial and continuing." We review the superior court's decision regarding the

existence of changed circumstances to support modification or termination of spousal maintenance for an abuse of discretion. *Nace v. Nace*, 107 Ariz. 411, 413 (1971); *Kelsey v. Kelsey*, 186 Ariz. 49, 53 (App. 1996). We will not set aside the superior court's findings unless they are clearly erroneous or unsupported by substantial evidence. *In re Marriage of Berger*, 140 Ariz. 156, 161 (App. 1983); *Bobrow v. Bobrow*, 241 Ariz. 592, 595-97, ¶¶ 11, 20 (App. 2017). The party seeking modification bears the burden of proving a change in circumstances. *Scott v. Scott*, 121 Ariz. 492, 494 (1979).

¶9 When assessing whether a substantial and continuing change has occurred, the court considers the latest order modifying the spousal maintenance award. *McClendon v. McClendon*, 243 Ariz. 399, 401-02, ¶ 10 (App. 2017). Here, Husband's spousal maintenance obligation was modified in a June 2017 order. Thus, in the instant proceedings the superior court assessed whether there has been a continuing or substantial change since June 2017.

¶10 First, Husband argues the superior court made "unwarranted assumptions about Husband's health, imputing fault to him for his substantial health issues merely because he is overweight, but doing so without taking any evidence from the physician who testified to support the court's findings." However, the superior court discussed Husband's health—an issue raised by Husband—in the context of whether or not there was a substantial or continuing change that justified termination of Husband's spousal support obligation; the superior court did not discuss Husband's health condition merely to "impute fault" to him.

¶11 In his opening brief, Husband contended he suffers from eleven health conditions. However, at trial, there was testimony that Husband's "medical conditions were due to years of [Husband] being overweight and that they did not occur recently." The superior court never found, as Husband contends, that Husband's "inability to work is his own fault because he is overweight." Instead, the superior found the evidence showed Husband likely suffered from these health problems for many years, so the court was unable to find Husband's health had substantially changed since June 2017.

¶12 At trial, Husband's physician testified Husband was currently in remission for non-Hodgkin's lymphoma, and the superior court specifically noted no evidence showed this cancer had reoccurred since 2001. A 2005 letter from one of Husband's physicians indicated that Husband was dealing with hypertension, peripheral vascular disease of the lower extremities, and depression and anxiety at that time. Another letter

from a different physician indicates that Husband had been treated for diabetes since at least 2011. Husband underwent knee replacement in 2015. A 2017 physician letter indicated Husband was "status post prostate cancer," and it indicated Husband had a kidney removed, though it is unclear whether the kidney was removed before or after June 2017. The record demonstrates Husband has been dealing with these conditions prior to June 2017, and no evidence or testimony was presented as to how these health problems may have progressed or worsened.

¶13 Although the record is unclear as to when Husband was diagnosed with an aortic aneurysm, and whether it was before or after June 2017, the superior court did note its concern for possible future surgery related to this condition. A 2019 letter from Husband's physician stated that the aortic aneurysm would be closely monitored over the next several months for continued growth, and if it did continue to grow, Husband would require surgery. However, the change in circumstances must exist before a party may petition for modification; relying on future events is too "speculative." *Chaney v. Chaney*, 145 Ariz. 23, 26-27 (App. 1985). At the time of the hearing, it was unclear when or if Husband would have surgery to address the aortic aneurysm, and it was unclear how such a surgery would affect Husband and his ability to work in the future.

¶14 Additionally, at trial, there was no testimony about Husband's current job duties at SDF. Husband's physician did not provide any testimony at trial about how Husband's health conditions might specifically affect Husband's ability to work. Husband's physician could not state that working full-time was life-threatening to Husband or that it would shorten his life in any way. The superior court did note that a physician advised Husband to decrease his work. The superior court further noted that Husband had in fact decreased his work to part-time. However, the court found that according to Husband's most recent affidavit of financial information ("AFI"), Husband's monthly earnings were $3,352 per month. In the June 2017 order, Husband was attributed a salary of $2,600 per month. The superior court found Husband's health conditions did not cause a substantial or continuing change in his earnings. Husband bears the burden of proving there has been a substantial change in circumstances since June 2017, and the superior court did not abuse its discretion in finding that he failed to do so. *See Scott*, 121 Ariz. at 494.

¶15 Next, Husband argues the superior court erred when determining his income. Husband argues it "improperly consider[ed] Husband's borrowing from credit cards as 'income.'" Although Husband claims the $1,505 listed on his AFI was borrowing on credit cards, his AFI

specifically states $1,505 of his income is "credit cards, sales/liquidation of assets *& [repayment] of loans from SDF*." (Emphasis added.) Husband's AFI makes clear the $1,505 is not entirely Husband's borrowing from credit cards, as he now alleges on appeal. Instead, this amount includes payments from SDF to Husband to repay significant loans Husband has made to his company in previous years.

¶16 Further, in addition to Husband receiving social security income, there was testimony at trial that SDF continues to pay many of Husband's expenses, as was the case in June 2017. Testimony also showed SDF makes the payments for the truck Husband uses for both company and personal use, and SDF also pays for gas and insurance for the truck. Husband testified that SDF paid for his cell phone bill. Although Husband used his dogs in SDF's marketing, they were still his pets, and Husband testified that SDF paid for veterinary bills, dog food, and other supplies. Husband also admitted at trial to making petty cash withdrawals from SDF for personal use, which the superior court characterized as "substantial." The superior court found it was not provided with any reason that SDF was "not repaying [Husband] for loans and other expenses at a rate greater than approximately $1,500.00 per month."

¶17 The superior court specifically noted in its 2007 decree of dissolution that "Husband's income can only be described as ambiguous," and that statement still rings true today. Although Husband claims he has been unable to draw a salary from SDF since 2015, he did not raise this argument in his two prior modification proceedings. We repeat that Husband has the burden of proving there has been a substantial and continuing change in his income in order to justify terminating his spousal maintenance, and looking at this record, we cannot say the superior court erred when it found Husband failed to do so.

¶18 Husband argues the superior court failed to properly consider Wife's income, which he contends consists of social security payments, public assistance, and mortgage loan forgiveness. Wife denied receiving public assistance and loan forgiveness at trial, but in any event, Husband fails to explain how Wife's income has substantially and continuously changed since June 2017. Wife has received disability benefits since the time of the divorce in 2007. Husband contends Wife has received the public benefits and mortgage loan forgiveness since 2014. These circumstances existed at the time of the 2017 modification proceedings. "[R]*es judicata* prevents the party 'from obtaining a modification . . . based on facts which could have been raised' in the previous proceeding." *McClendon*, 243 Ariz. at 402-03, ¶ 15 (second emphasis omitted) (quoting *In*

*re Marriage of Rowe*, 117 Ariz. 474, 475 (1978)). The superior court did not err.

¶19       Husband also argues that Wife has unreasonably dissipated the retirement assets she was awarded in the divorce decree, and Husband should not be penalized for such waste. At the same time, Husband contends "Wife has never proven at any time that she has, in fact, spent her retirement assets." Husband has previously raised the issue of Wife's retirement assets before the superior court and this court. As this court held in Husband's prior appeal:

> Wife reached retirement age in December 2013; therefore, this circumstance existed at the time of the earlier modification proceeding. Wife also received the life insurance proceeds, sales proceeds, and the lump sum annuity payment several years before Husband filed his first petition to modify. Evidence of these circumstances existed at the time of the prior proceedings. Yet, Husband did not raise them in his first petition to modify. Husband, therefore, cannot claim these events constitute a change in circumstances since the [most recent] order.

*Felder*, 1 CA-CV 15-0831, at *3, ¶ 15 (footnotes omitted).

¶20       Husband claims that the superior court has impermissibly "forgiven" Wife's dissipation of the retirement assets distributed to her from the divorce decree. But in the June 2017 modification proceedings, the superior court found that Wife "completely depleted" the retirement assets she was awarded in an unreasonable manner, and as a result, reduced Husband's spousal maintenance obligation. Husband did not appeal the June 2017 order. The superior court, therefore, already accounted for this dissipation in the 2017 order. It is not a changed circumstance now.

¶21       Finally, Husband argues the superior court "fail[ed] to make findings supported by the evidence with respect to the factors enumerated in A.R.S. § 25-319(B)," particularly (4), (5), and (9). The standard for modification or termination of a spousal maintenance obligation is whether there has been a substantial or continuing change in circumstances. A.R.S. § 25-327(A). If a court finds a substantial and continuing change in circumstances exists, then the court must determine what modification is appropriate, in light of the changed circumstances, using the factors in A.R.S. § 25-319(B). *Ruskin v. Ruskin*, 153 Ariz. 504, 506 (App. 1987); *see also Scott*, 121 Ariz. at 495 n.5 (stating that courts must consider "the same . . .

factors taken into consideration when granting an award for support and maintenance" under A.R.S. § 25–319(B)). Here, the superior court did not find a change of circumstances, so it was not required to make express findings as to each factor in § 25-319(B). We find no error.

**¶22** Husband requests his attorneys' fees and costs incurred in this appeal under A.R.S. § 25-324. He is not the prevailing party on appeal. For this reason, and having also considered the relevant financial evidence in the record and his positions on appeal, we decline to award fees or costs.

## CONCLUSION

**¶23** For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA